******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* KENNETH M. WEATHERSPOON
## (SC 20134)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.

*Syllabus*

A prosecutor makes a tailoring argument when he or she attacks the credibility of a testifying defendant by asking the jury to infer that the defendant has fabricated his testimony to conform to the testimony of previous witnesses. A tailoring argument is generic when the prosecutor asks the jury to make the inference solely on the basis of the defendant's presence at trial and his opportunity to fabricate his testimony, whereas a tailoring argument is specific when the prosecutor refers to evidence from which the jury reasonably might infer that the defendant fabricated his testimony to conform to the state's case as presented at the defendant's trial.

Convicted, following a jury trial, of sexual assault in a cohabiting relationship and assault in the third degree, the defendant appealed from the judgment of conviction, claiming that his right to confrontation under article first, § 8, of the Connecticut constitution was violated when the prosecutor made a generic tailoring argument during his closing argument to the jury, and that certain improper remarks by the prosecutor during cross-examination and closing argument violated his due process right to a fair trial. The defendant's conviction arose out of his alleged attack of the victim, with whom he lived and was in a romantic relationship. The day after the incident, a police officer, C, questioned the defendant about the incident. At the defendant's trial, C testified that the defendant told him that he had been drinking on the day in question and that he did not remember anything that had occurred. C further testified that he asked the defendant if he had consumed enough alcohol to black out, to which the defendant replied in the negative. The victim also testified at trial as to the circumstances surrounding the incident and her belief that the defendant had been drinking heavily before it occurred. The defendant's testimony at the trial conflicted in certain respects with the testimony of C and the victim, both of whom had testified before him. Specifically, the defendant denied telling C that he did not remember what had happened on the day of the incident but, instead, maintained that he remembered what had occurred but had declined to give C a statement due to his apprehension that it would be misconstrued or manipulated by the police. Additionally, the defendant agreed with the prosecutor when the prosecutor asked the defendant, without any objection, if C was wrong when he testified that the defendant had told him that he could not remember the incident. During closing argument, the prosecutor referred to C's testimony that the defendant had no memory of the incident and remarked that the defendant would have the jury believe that C lied about what the defendant had told C regarding his memory of the incident. The prosecutor further urged the jury to assess the credibility of the defendant against that of C and the victim, and argued that the defendant's testimony "was entirely self-serving with the benefit of hearing all the testimony that came before." Defense counsel did not object to any of the prosecutor's remarks during closing argument. *Held*:

1. The defendant could not prevail on his unpreserved claim that the prosecutor's statement during closing argument that the jury should discredit the defendant's testimony because it had been made "with the benefit of hearing all the testimony that came before" constituted impermissible generic tailoring and, therefore, violated his right to confrontation under article first, § 8, of the Connecticut constitution: the prosecutor's tailoring argument, when viewed in the context of his other remarks during closing argument, was specific rather than generic, in that it was based expressly on evidence in the record that, if credited, would support a claim of tailoring, as the challenged statement was immediately preceded by the prosecutor's reference to the conflicting versions of the attack

to which the defendant and the victim testified, and was immediately followed by the prosecutor's reference to the discrepancy between C's testimony that the defendant claimed to have no memory of the incident and the defendant's testimony that C was wrong and that he merely had declined to give C a statement; accordingly, because the prosecutor made a specific, rather than a generic, tailoring argument that was linked to the evidence and not to the defendant's mere presence at trial, this court did not reach the defendant's claim that the prosecutor's generic tailoring argument violated his right to confrontation under the state constitution.

2. This court rejected the defendant's alternative claims that, in light of the prosecutor's statement that the jury should discredit the defendant's testimony because it had been made "with the benefit of hearing all the testimony that came before," his conviction should be reversed on the basis of prosecutorial impropriety, under the doctrine of plain error, or in the exercise of this court's supervisory authority: there was no merit to the defendant's claim that the prosecutor's statement rose to the level of a prosecutorial impropriety, as it was tied to evidence permitting an inference of tailoring; moreover, the challenged statement did not constitute plain error that required reversal of the judgment of conviction, as tailoring arguments are permissible under the federal constitution; furthermore, this court declined the defendant's request to exercise its supervisory authority to reverse his conviction and establish a rule prohibiting generic tailoring arguments, as the defendant failed to establish that the challenged statement constituted a generic tailoring argument or caused him to suffer any injustice.

3. The defendant could not prevail on his claim that the prosecutor deprived him of his due process right to a fair trial when he purportedly conveyed to the jury that it must find that C had lied in order to find the defendant not guilty, because, even if the prosecutor's remarks were improper, there was no reasonable likelihood that the jury would have returned a different verdict in the absence of those improprieties: the prosecutor's remarks were invited by the defendant's assertion at trial that C misrepresented what the defendant had said regarding his memory of the incident and were an attempt to characterize the defendant's claim as such, the improprieties were not frequent or severe, defense counsel did not object to the allegedly improper remarks or ask the court to take any curative measures, the court properly instructed the jury on witness credibility and police officer testimony both before and after the presentation of evidence, although the strength of the state's case was not overwhelming and the alleged improprieties related to the critical issue of witness credibility, the victim's testimony regarding her version of the events directly was corroborated by photographic, video and testimonial evidence, and the fact that the jury found the defendant not guilty of the charge of second degree strangulation demonstrated that it independently assessed the defendant's credibility notwithstanding the alleged improprieties.

Argued October 19, 2018—officially released July 30, 2019

*Procedural History*

Substitute information charging the defendant with the crimes of sexual assault in a cohabiting relationship, strangulation in the second degree and assault in the third degree, brought to the Superior Court in the judicial district of New London and tried to the jury before *Jongbloed, J.*; verdict and judgment of guilty of sexual assault in a cohabiting relationship and assault in the third degree, from which the defendant appealed. *Affirmed.*

*Lisa J. Steele*, assigned counsel, for the appellant (defendant).

*Lawrence J. Tytla*, supervisory assistant state's attorney, with whom, on the brief, was *Michael L. Regan*, state's attorney, for the appellee (state).

*Opinion*

ECKER, J. The defendant, Kenneth M. Weatherspoon, was convicted after a jury trial of sexual assault in a cohabiting relationship in violation of General Statutes § 53a-70b and assault in the third degree in violation of General Statutes § 53a-61 (a) (1). The defendant testified at trial, and his claims on appeal relate to allegedly improper attacks on his credibility made by the prosecutor during cross-examination and closing argument. First, the defendant contends that the prosecutor made an impermissible "generic tailoring" argument by commenting in closing argument that the jury should discredit the defendant's trial testimony because, among other reasons, it came at the end of the trial, "with the benefit of hearing all the testimony that came before."[1] The defendant claims that this comment violated his confrontation rights under article first, § 8, of the Connecticut constitution.[2] He also asks this court to hold that the prosecutor's tailoring comment (1) constitutes prosecutorial impropriety depriving the defendant of his due process right to a fair trial, (2) requires reversal under the plain error doctrine, and/or (3) should prompt us to exercise our supervisory authority to reverse his judgment of conviction and prohibit generic tailoring arguments. Second, the defendant claims that the prosecutor engaged in impermissible conduct in violation of his due process right to a fair trial pursuant to *State* v. *Singh*, 259 Conn. 693, 793 A.2d 226 (2002), by conveying to the jury that it would need to find that the police officer had lied in order to find the defendant not guilty.

Upon careful review of the record, we affirm the judgment of conviction. We conclude that the prosecutor's tailoring comment constituted a specific, rather than a generic, tailoring argument because it was substantiated by express reference to evidence from which the jury reasonably could infer that the defendant had tailored his testimony. We therefore decline the defendant's request to decide whether generic tailoring arguments violate the state constitution. With respect to the alleged improprieties under *Singh*, for the purposes of our analysis, we assume, without deciding, that *Singh* was violated, but we nonetheless conclude that the defendant was not deprived of his due process right to a fair trial. We therefore affirm the judgment of conviction.

I

We begin by setting forth the pertinent facts and relevant procedural history. The complainant, A,[3] and the defendant met while working for the United States Navy. They dated for a lengthy period and eventually moved into an apartment together. At trial, A testified that, on November 5, 2015, the two began to engage in consensual oral sex in the living room of their apartment. During the encounter, however, the defendant

became forceful and aggressive, and he ignored A's request that he stop. The defendant began to bite A's neck and buttocks despite her plea that he was hurting her. He then told her to go into the bedroom, where he continued to physically abuse her despite her efforts to leave the room. The defendant pushed A down on the bed, pulled her legs out from under her when she got up so that she fell, and then held her against the wall while choking her. After he let her go, she fell to the ground, and he began to choke her again. At the end of the altercation, the defendant told A to "[g]et the fuck out of my sight . . . ." A then barricaded herself in the bathroom, where she curled up in the fetal position and cried. She later showered and prepared to go to work, but, as she did so, the defendant renewed his aggressive behavior. He began to intermittently use the camera on his cell phone to film A while interrogating her about their relationship. Before A was able to leave the apartment, the defendant grabbed her by the belt and led her into the living room, where he took off her belt and pants. She told him to stop, but he nonetheless proceeded to penetrate her with his penis, both anally and vaginally.

Upon her arrival at work, A's coworker and supervisor observed marks on her neck. A disclosed to her coworker that her boyfriend had forced her to perform oral sex. After the same coworker overheard A talking on the phone about the assault allegations, he reported the information to his superiors pursuant to Navy protocol. A then spoke with her superior and the Navy's Sexual Assault Response Coordinator. She slept overnight in her superior's office and returned to her apartment on the morning of November 6, 2015, after her shift had ended.

Later that morning, Officers Bridget Nordstrom, Jesse Comeau, and Darren Kenyon, all of the Groton Police Department, arrived at the apartment to investigate the alleged incident. Nordstrom spoke with A in the apartment while Comeau and Kenyon spoke with the defendant on the balcony. The content of the defendant's conversation with Comeau and Kenyon, as set forth in detail later in this opinion, is disputed. The defendant subsequently was arrested and charged with sexual assault in a cohabiting relationship in violation of § 53a-70b, strangulation in the second degree in violation of General Statutes § 53a-64bb, and assault in the third degree in violation of § 53a-61 (a) (1).

At trial, in addition to testifying in detail about the events of November 5, 2015, A explained her belief that the defendant had been drinking heavily before he assaulted her. The jury also heard testimony from A's coworkers about the marks on her neck and her partial disclosure of the incident. Photographs of A's injuries, which corroborated her testimony of the assault, were introduced into evidence, and four video recordings

from the defendant's cell phone, taken by him at various times during the incident, were shown to the jury. A further testified that the sexual assault occurred between the third and fourth video, and the jury reasonably could have found that the noticeable change in her appearance between those two videos, specifically her hair being "messed up," supported her story.

At trial, Comeau testified that, on the day after the incident, the defendant told him and Kenyon that he had been drinking the previous day and did not remember what had happened. Comeau explained: "We asked him if he drank enough that he considered himself to be blacked out, and he said no, he didn't think so, but he did not recall any details." Comeau also testified that the defendant "did not recall making the video."

After the state rested, the defendant testified on his own behalf. The defendant acknowledged that he and A had engaged in oral sex on the date in question but said that it was initiated by A. Further, he characterized it as completely consensual in nature and testified that he was not forceful or rough during the oral sex and that at no point did A communicate that she wanted it to stop. The defendant denied the occurrence of any other sexual activity with A that day, or any biting, and he attributed A's injuries to her light skin color and the physical nature of her job. He also explained that A's hair became tousled after the third video because he innocently ruffled her hair, as he had done on prior occasions. The defendant's testimony also differed materially from the version of events as related to the jury by Comeau. On direct examination, the defendant testified that he never told the officers that he could not remember what had happened the prior day. He agreed that the officers asked him if he had consumed enough alcohol to black out, and that he had responded to that inquiry by saying "no." The defendant then testified as follows:

"Q. Did [Comeau] ever ask you to provide any details of the day's events, the day before?

"A. He asked me to—yeah. He said, would you like to speak to me about what happened?

"Q. What did you say?

"A. No.

"Q. Why'd you say no?

"A. Because there's a stigma with the police that if you tell them anything, no matter it be good or bad, it's definitely going to haunt you later.

"Q. Okay.

"A. And without any legal [representation] whatsoever, I wasn't gonna—I wasn't gonna go through that.

"Q. Okay.

"A. Because it's two officers outside and me. They could say I said anything.

"Q. Right. So you thought it [would be] better to keep quiet.

"A. Right."

The defendant acknowledged that he unlocked his phone for the officers so that they could see the videos.

The prosecutor's cross-examination of the defendant involved the following relevant exchange:

"Q.  . . .  [T]his is [the] first time you've shared your account of what happened on November 5, 2016, publicly, is it not?

"A. With—within this type of environment, yes. I had a lawyer previously before I had [my current trial counsel].

"Q. You never shared any of this information with the police when they were investigating the matter, did you?

"A. No.

"Q. In fact, when the officers took you outside and spoke to you, you told them that you didn't remember anything about what happened the day before; isn't that what you told them?

"A. No.

"Q. That's not what you told them?

"A. No.

"Q. You've seen the police report in the course of your preparation for the case, and now you're telling us that you didn't tell them that you didn't remember?

"A. They're saying that I told them I didn't remember.

"Q. Oh, and you're saying that they're wrong.

"A. Yes.

"Q. And you just chose not to give any details or any account of what happened on November 5, because of this apprehension you have about the police and how they might twist or misconstrue what happened; is that right?

"A. That's exactly what happened, isn't it?

"Q. Now you get to wait and come here and tell us for the first time your account of what happened.

"A. Yes."

The defendant also repeated on cross-examination that he told the police he had been drinking and that the officers had asked him "if [he] had had enough alcohol to have blacked out . . . ." The following exchange occurred at the end of the cross-examination:

"Q. And your testimony is you never told the police that you had no memory of what happened?

"A. Correct.

"Q. You had a memory, you just chose not to share it with them.

"A. Correct.

"Q. Did you lie to them?

"A. No.

"Q. You told them you didn't remember.

"A. They said I told them I didn't remember.

"Q. But that's not what you said?

"A. No. I did not tell them I did not remember.

"Q. Did they ask you to give a statement?

"A. Yes.

"Q. And what was your response to that?

"A. No.

"Q. Did you give them any reason why you didn't want to give a statement?

"A. No."

In closing argument, the prosecutor referenced the testimony of Comeau regarding the defendant's alleged lack of memory of the events at issue, and pointed out that both Comeau and the defendant acknowledged that the officers had asked the defendant whether he had blacked out. The prosecutor told the jury that it made sense that the officers had inquired about blacking out in response to the defendant's statement to them that he could not remember the events of that day. The prosecutor told the jury, "The defendant would have you believe that the officer lied about that. He would have you believe that the officer came in and lied . . . ." The prosecutor continued: "You really have to evaluate all of [the defendant's] testimony and, again, ask yourselves whether it's credible. . . . Ask [yourselves] whether his claim that the officers lied was credible. I submit to you it isn't, and I think his credibility is a good way of evaluating [A's] credibility."

In his rebuttal argument, the prosecutor again attempted to discredit the defendant's testimony. The prosecutor asked the jury to assess the credibility of the defendant and A with regard to their respective versions of events and to assess the relative credibility of the defendant "vis-à-vis" Officer Comeau. The prosecutor argued: "Finally, you know, when it comes to the he said/she said, you know, I've talked about that before, but that is really an artificial construct. That is what the defense would like this case to be, because, then, it's a scale and it's he said this, she said that,

therefore, we can't have proof beyond a reasonable doubt. There are a couple things I'd like you to keep in mind. Evaluate [A's] demeanor throughout the testimony, evaluate the defendant's. Evaluate how he came across. Look at the details of his testimony, which I would submit to you was entirely self-serving with the benefit of hearing all the testimony that came before.

"You should also think about his interaction with Officer Comeau. Officer Comeau was very emphatic, he was absolutely clear that the defendant said he had no memory of the events of the day before. That's why he asked whether the defendant had a blackout or had had blackouts in the past. Why else would the subject of blackouts even come up? The defendant kind of flatly says no, no, I just didn't want to . . . share any information because, you know, you know how tricky those cops can be. That's why I'm here. You have to evaluate the credibility . . . of the defendant vis-à-vis Officer Comeau." At no point did defense counsel object to any of the prosecutor's questions or comments at issue on appeal.

The jury found the defendant guilty of sexual assault in a cohabiting relationship and assault in the third degree, and not guilty of strangulation in the second degree. He was sentenced to a total of fourteen years of incarceration, execution suspended after nine years, and ten years of probation. The defendant appealed to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

II

The defendant's first set of claims on appeal are premised on the contention that the prosecutor made an impermissible generic tailoring argument during closing argument when he suggested that the jury should discredit the defendant's version of events because he had testified "with the benefit of hearing all the testimony that came before." Part A of this section describes tailoring in the context of a criminal trial and examines the case law that has developed in response to past constitutional challenges to this type of argumentation. Part B addresses the defendant's claim that the tailoring argument made by the prosecutor in the present case violated his right to confrontation under article first, § 8, of the Connecticut constitution. Part C discusses the defendant's other appellate claims relating to the tailoring argument.

A

A prosecutor makes a tailoring argument when he or she attacks the credibility of a testifying defendant by asking the jury to infer that the defendant has fabricated his testimony to conform to the testimony of previous witnesses. See *Portuondo* v. *Agard*, 529 U.S. 61, 73, 120 S. Ct. 1119, 146 L. Ed. 2d 47 (2000). The term most

frequently is used to refer to a prosecutor's direct comment during closing argument on the defendant's opportunity to tailor his testimony, although a prosecutor sometimes also will use cross-examination to convey a discrediting tailoring message to the jury.[4] There are two types of tailoring arguments: generic and specific. The former occurs when the prosecutor argues the inference solely on the basis of the defendant's "presence at trial and his accompanying opportunity to fabricate or tailor his testimony." *State* v. *Alexander*, 254 Conn. 290, 300, 755 A.2d 868 (2000); see also *State* v. *Daniels*, 182 N.J. 80, 98, 861 A.2d 808 (2004) ("[g]eneric accusations occur when the prosecutor, despite no specific evidentiary basis that [the] defendant has tailored his testimony, nonetheless attacks the defendant's credibility by drawing the jury's attention to the defendant's presence during trial and his concomitant opportunity to tailor his testimony"). A specific tailoring argument, by contrast, occurs when a prosecutor makes express reference to the evidence, from which the jury might reasonably infer that the substance of the defendant's testimony was fabricated to conform to the state's case as presented at trial. See *State* v. *Daniels*, supra, 98 ("[a]llegations of tailoring are specific when there is evidence in the record, which the prosecutor can identify, that supports an inference of tailoring").

The constitutionality of tailoring arguments has been the subject of significant judicial attention over the past twenty-five years. The primary concern under the federal constitution has been whether tailoring arguments unduly burden the defendant's sixth amendment[5] right to confrontation at trial—a fundamental component of the constitutional guarantee that is understood to include "the accused's right to be present in the courtroom at every stage of his trial." *Illinois* v. *Allen*, 397 U.S. 337, 338, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970).

Our court first addressed the constitutionality of tailoring arguments in *State* v. *Cassidy*, 236 Conn. 112, 155, 672 A.2d 899, cert. denied, 519 U.S. 910, 117 S. Ct. 273, 136 L. Ed. 2d 196 (1996). We held in *Cassidy* that generic tailoring arguments violate the sixth amendment's confrontation clause; id., 120; but specific tailoring arguments are constitutionally permissible because they are "linked solely to the evidence and not, either directly or indirectly, to the defendant's presence at trial." Id., 128 n.17.[6] This court's reasoning was straightforward: "Inviting the fact finder to draw an inference adverse to a defendant solely on account of the defendant's assertion of a constitutional right impermissibly burdens the free exercise of that right and, therefore, may not be tolerated." Id., 127. *Cassidy*, however, reassured the state that the prohibition against generic tailoring arguments did not prevent the prosecution from aggressively attacking a testifying defendant's credibility. We stated that "the prosecutor, in his closing argument, was free to challenge the defendant's version

of the facts by reference to any evidence properly adduced at trial. . . . [H]owever, he was not free to assert that the defendant's presence at trial had enabled him to tailor his testimony to that of other witnesses. Such argument exceeded the bounds of fair comment because it unfairly penalized the defendant for asserting his constitutionally protected right to confront his accusers at trial." (Footnote omitted.) Id., 128–29.

Four years later, the sixth amendment underpinning of *Cassidy* was removed when the United States Supreme Court held that generic tailoring arguments do not violate any federal constitutional rights.[7] *Portuondo* v. *Agard*, supra, 529 U.S. 75–76. In *Portuondo*, the court distinguished between a prosecutor's effort to discredit a defendant by commenting on his refusal to testify at trial, which is prohibited because the jury is not allowed to infer guilt on that basis under *Griffin* v. *California*, 380 U.S. 609, 614–15, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965), and a tailoring argument, which invites the jury to act on its "natural and irresistible" inclination to make the permissible inference of tailoring from a defendant's presence throughout all of the prior trial testimony. Id., 65, 67–68. The court pointed out that generic tailoring arguments pertain to the defendant's "*credibility as a witness*, and [are] therefore in accord with our [long-standing] rule that when a defendant takes the stand, his credibility may be impeached and his testimony assailed like that of any other witness." (Emphasis in original; internal quotation marks omitted.) Id., 69.

The *Portuondo* majority emphasized that its ruling was limited to federal constitutional grounds and did not address whether generic tailoring arguments were "always desirable as a matter of sound trial practice," which, the court explained, was an inquiry "best left to trial courts, and to the appellate courts which routinely review their work." *Portuondo* v. *Agard*, supra, 529 U.S. 73 n.4. This caveat also was noted in a concurrence by Justice Stevens, in which he expressed the view that generic tailoring arguments "should be discouraged rather than validated," and emphasized that the majority's holding "does not, of course, deprive [s]tates or trial judges of the power . . . to prevent such argument[s]" altogether. Id., 76.[8]

Because *Cassidy* was decided under the federal constitution, *Portuondo* required us to overrule its holding, which we did in *State* v. *Alexander*, supra, 254 Conn. 296. We stated in *Alexander* that generic tailoring comments "on the defendant's presence at trial and his accompanying opportunity to fabricate or tailor his testimony" were permissible under the federal constitution. Id., 300. Although the defendant in *Alexander* raised a state constitutional claim through supplemental briefing, this court was "not persuaded by his argument." Id., 296 n.9.

The defendant's constitutional claim rests on two foundational propositions, each of which must prove correct for his claim to succeed. First, the defendant contends that the prosecutor made a *generic* tailoring argument when he asked the jury to "[l]ook at the details of [the defendant's] testimony, which I would submit to you was entirely self-serving with the benefit of hearing all the testimony that came before." Second, the defendant claims that generic tailoring arguments, though permissible as a matter of federal constitutional law under *Portuondo*, nonetheless violate the confrontation right contained in article first, § 8, of the Connecticut constitution, which the defendant says provides broader protection than its federal counterpart. The state disputes the defendant's state constitutional analysis and also argues as a threshold matter that there is no need to reach the constitutional question because the prosecutor made a permissible *specific* tailoring argument by tying the challenged comment to evidence that would support a claim of tailoring. We agree with the state that the prosecutor's comments constituted specific tailoring, and, therefore, we do not reach the defendant's state constitutional claim.

The defendant did not object to the prosecutor's tailoring comment at trial, and we consequently review the defendant's unpreserved constitutional claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[9] because the record is adequate for review and the defendant alleges a violation of a state constitutional right. See, e.g., *State* v. *Harris*, 330 Conn. 91, 114–15 n.16, 191 A.3d 119 (2018) ("[T]he record is adequate for our review of the defendant's state constitutional claim and it is of constitutional magnitude. We therefore consider it in accordance with the principles for appellate review of unpreserved constitutional claims articulated by this court in *State* v. *Golding* . . . ."); see also *State* v. *Peeler*, 271 Conn. 338, 360, 857 A.2d 808 (2004) ("[t]he first two [prongs of *Golding*] involve a determination of whether the claim is reviewable" [internal quotation marks omitted]), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005).

A close examination of the pertinent evidentiary record, as laid out in part I of this opinion, is necessary to understand the context in which the tailoring argument was made. One part of the relevant evidentiary record involved the conflicting testimony of the defendant and the investigating officer, Comeau, regarding the defendant's memory of the incident when interviewed the following day. In addition, there were significant conflicts between the trial testimonies of the defendant and A regarding the underlying events. Most basically, the defendant denied that any sexual activity had occurred other than consensual oral sex, and their testimonies conflicted with regard to certain details of

the alleged encounter as well.

During his rebuttal closing argument, the prosecutor urged the jury critically to evaluate the defendant's credibility by reference to both A's testimony and Comeau's testimony. On appeal, the defendant focuses on only one part of a single sentence in the prosecutor's rebuttal argument, in which he stated: "Look at the details of [the defendant's] testimony, which I would submit to you was entirely self-serving *with the benefit of hearing all the testimony that came before.*" (Emphasis added.) However, we must view that statement in context to determine the true nature of the prosecutor's argument. The statement was immediately preceded by a reference to the conflicting versions of events offered by A and the defendant at trial, and immediately followed by the suggestion that the defendant's version was fabricated because he actually had no memory of the events, as he had told Comeau the day following the assault. We conclude that the challenged tailoring comment was "specific" rather than "generic" because the suggestion of tailoring was tied to evidence that, if credited by the jury, could have supported such a claim.[10] The prosecutor's argument contained two different but related evidence-based assertions: first, the discrepancy between the defendant's pretrial statement to Comeau and his in-court trial testimony supports the inference that his in-court testimony is false; and second, the defendant's false testimony about his memory allowed him to conform his recitation of events to that of A's trial testimony, thereby supporting a reasonable inference of tailoring. The tailoring theory could have been articulated more clearly, but it was made, and it amounted to a specific tailoring argument because it was tied to evidence that supported such an inference.

In light of this conclusion, we need not decide whether our state constitution provides broader protection against generic tailoring arguments than does the federal constitution.[11] We emphasize that this holding addresses only the defendant's state constitutional claim and should not be taken to indicate our blanket approval of all tailoring arguments as a matter of proper trial practice, an issue that we take up at greater length in part II C of this opinion.

C

We next address the defendant's claims that, even if the prosecutor's tailoring argument did not violate the confrontation clause of the state constitution, this court should reverse his conviction on the basis of prosecutorial impropriety or under the plain error doctrine, or in the exercise of our supervisory authority. We do not find any of these arguments persuasive.

"[I]n analyzing claims of prosecutorial [impropriety], we engage in a two step analytical process. The two steps are separate and distinct: (1) whether [an impro-

priety] occurred in the first instance; and (2) whether that [impropriety] deprived a defendant of his due process right to a fair trial."[12] (Internal quotation marks omitted.) *State* v. *Ciullo*, 314 Conn. 28, 34–35, 100 A.3d 779 (2014). "[P]rosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . While the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment upon, or to suggest an inference from, facts not in evidence, or to present matters which the jury ha[s] no right to consider." (Internal quotation marks omitted.) Id., 37–38. As we have explained, the prosecutor's tailoring argument in the present case was tied to evidence permitting an inference of tailoring, and we therefore reject the defendant's claim that it rose to the level of a prosecutorial impropriety.

We also disagree with the defendant's alternative claim that the tailoring argument was plain error.[13] "An appellate court addressing a claim of plain error first must determine if the error is indeed plain in the sense that it is patent [or] readily [discernible] on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . This determination clearly requires a review of the plain error claim presented in light of the record. . . . [An appellant] cannot prevail . . . unless he demonstrates that the claimed error is *both* so clear *and* so harmful that a failure to reverse the judgment would result in manifest injustice." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *McClain*, 324 Conn. 802, 812, 155 A.3d 209 (2017). Because tailoring arguments are permissible under the federal constitution; see *Portuondo* v. *Agard*, supra, 529 U.S. 65–73; *State* v. *Alexander*, supra, 254 Conn. 294–300; we hold that the prosecutor's comment did not constitute plain error that requires reversal of the defendant's judgment of conviction.

Finally, and for similar reasons, we decline the defendant's request that we invoke our supervisory authority to reverse his judgment of conviction and adopt a rule prohibiting generic tailoring arguments. "It is well settled that [a]ppellate courts possess an inherent supervisory authority over the administration of justice. . . . Under our supervisory authority, we have adopted rules intended to guide the lower courts in the administration of justice in all aspects of the criminal process." (Citation omitted; internal quotation marks omitted.) *State* v. *Elson*, 311 Conn. 726, 764–65, 91 A.3d 862 (2014). "Generally, cases in which we have invoked our supervisory authority for rule making have fallen into two categories. . . . In the first category are cases wherein we have utilized our supervisory power to articulate a procedural rule as a matter of policy, either as [a] holding or dictum, but without reversing [the underlying judgment] or portions thereof. . . . In the second cate-

gory are cases wherein we have utilized our supervisory powers to articulate a rule or otherwise take measures necessary to remedy a perceived injustice with respect to a preserved or unpreserved claim on appeal." (Citations omitted; footnote omitted; internal quotation marks omitted.) *In re Daniel N.*, 323 Conn. 640, 646–47, 150 A.3d 657 (2016).

Because we do not disapprove of specific tailoring arguments when they are warranted by the evidentiary record, we have no occasion at this time to exercise our supervisory authority to regulate generic tailoring arguments. We see no immediate need to establish a prospective rule. We also see no reason to invoke our supervisory authority to remedy an injustice relating to the prosecutor's targeted use of a specific tailoring argument in the present case; no such injustice occurred here, for the reasons previously discussed. Again, although the prosecutor's allegation of tailoring was not described with optimal clarity, his statement that the defendant's testimony "was entirely self-serving with the benefit of hearing all the testimony that came before," was supported by his explicit reference to specific evidence that could lead to a reasonable inference of tailoring. For that reason, it was not improper.

We pause briefly to qualify our holding in this regard to prevent any future misunderstanding. Our approval of specific tailoring arguments should not be taken as a blanket approval of all tailoring arguments. To the contrary, a tailoring argument does not automatically become appropriate just because a defendant chooses to testify in his or her criminal trial, and prosecutors and trial courts must take care to ensure that any such argument is tied expressly and specifically to evidence that actually supports the inference of tailoring. It is true that the United States Supreme Court held in *Portuondo* that tailoring arguments do not violate the sixth amendment, but the court made equally clear, however, that state courts may prohibit or limit tailoring arguments by local decree as a matter of sound trial practice. See *Portuondo* v. *Agard*, supra, 529 U.S. 73 n.4; id., 76 (Stevens, J., concurring). Although the present case does not require us to decide at this time whether to adopt a formal rule prohibiting generic tailoring arguments as an exercise of our supervisory authority, such a rule may become necessary if future cases reveal that tailoring arguments are being made indiscriminately and without an appropriate evidentiary basis. Likewise, the fact that generic tailoring arguments do not burden federal constitutional rights does not mean that they pass constitutional muster under our state constitution. We express no view on these issues, but observe that a number of our sister states have determined that generic tailoring arguments are impermissible as a matter of sound trial practice or state law. See, e.g., *Martinez* v. *People*, 244 P.3d 135, 140–42 (Colo. 2010) (generic tailoring arguments are improper); *State* v. *Mattson*,

122 Haw. 312, 327–28, 226 P.3d 482 (2010) (generic tailoring arguments in closing argument are improper under state constitution); *Commonwealth* v. *Gaudette*, 441 Mass. 762, 767, 808 N.E.2d 798 (2004) (generic tailoring arguments in closing argument are impermissible); *State* v. *Swanson*, 707 N.W.2d 645, 657–58 (Minn. 2006) ("although not constitutionally required, the better rule is that the prosecution cannot use a defendant's exercise of his right of confrontation to impeach the credibility of his testimony, at least in the absence of evidence that the defendant has tailored his testimony to fit the state's case"); *State* v. *Daniels*, supra, 182 N.J. 98 (using supervisory authority to hold as impermissible generic tailoring arguments during closing argument); *State* v. *Wallin*, 166 Wn. App. 364, 376–77, 269 P.3d 1072 (2012) (generic tailoring suggestion on cross-examination impermissible).

### III

The defendant's other principal claim on appeal relates to a different trial tactic allegedly used by the prosecutor to undermine the defendant's credibility. The defendant argues that the prosecutor violated his right to a fair trial under *State* v. *Singh*, supra, 259 Conn. 693, by conveying to the jury that, in order to find the defendant not guilty, it must find that Comeau had lied.[14] The state denies that any *Singh* violation occurred and further responds that the defendant was not deprived of his right to a fair trial because the defendant himself "interjected the issue of whether the police testimony was credible" by "suggest[ing] that the police were lying or twisting what he told them . . . ." Additionally, the state claims that "the alleged improprieties, if they existed, were neither severe nor frequent, nor critical to the central issues of the case," and that "the objected-to testimony and argument did not directly relate to evidence of the crime." For purposes of our analysis, we assume, without deciding, that *Singh* was violated, but we nonetheless conclude that the defendant was not deprived of his right to a fair trial.[15]

As we noted previously, when a defendant raises a claim of prosecutorial impropriety, we first "must determine whether any impropriety in fact occurred; second, we must examine whether that impropriety, or the cumulative effect of multiple improprieties, deprived the defendant of his due process right to a fair trial. . . . To [do so], we must determine whether the sum total of [the prosecutor's] improprieties rendered the defendant's [trial] fundamentally unfair . . . . The question of whether the defendant has been prejudiced by prosecutorial [improprieties], therefore, depends on whether there is a reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties. . . . Accordingly, it is not the prosecutorial improprieties themselves but,

rather, the nature and extent of the prejudice resulting therefrom that determines whether a defendant is entitled to a new trial." (Citation omitted; internal quotation marks omitted.) *State* v. *Jones*, 320 Conn. 22, 34–35, 128 A.3d 431 (2015). "[W]hen a defendant raises on appeal a claim that improper remarks by the prosecutor deprived [him] of his constitutional right to a fair trial, the burden is on the defendant to show, not only that the remarks were improper, but also that, considered in light of the whole trial, the improprieties were so egregious that they amounted to a denial of due process." (Internal quotation marks omitted.) Id., 37.

In order to address whether the defendant was deprived of his due process right to a fair trial, we consider the factors set forth in *State* v. *Williams*, 204 Conn. 523, 529 A.2d 653 (1987), which include, "[1] the extent to which the [impropriety] was invited by defense conduct or argument . . . [2] the severity of the [impropriety] . . . [3] the frequency of the [impropriety] . . . [4] the centrality of the [impropriety] to the critical issues in the case . . . [5] the strength of the curative measures adopted . . . and [6] the strength of the state's case." (Citations omitted.) Id., 540. "As is evident upon review of these factors, it is not the prosecutor's conduct alone that guides our inquiry, but, rather, the fairness of the trial as a whole." *State* v. *Singh*, supra, 259 Conn. 701. In addition, the fact that the defendant did not object to the remarks at trial is part of our consideration of "whether a new trial or proceeding is warranted . . . ." (Internal quotation marks omitted.) *State* v. *Ciullo*, supra, 314 Conn. 36. Applying the *Williams* factors to the present case, we conclude that the defendant was not deprived of his due process right to a fair trial.

We begin by assessing whether there were any instances of defense conduct or argument that invited the alleged improprieties. This factor weighs heavily against finding a due process violation in the present case. The prosecutor would have been hard-pressed to avoid confronting, directly and forcefully, the defendant's prominent claim that the police officers misrepresented what he had said to them the day following the incident. "[T]he defendant himself, by virtue of his defense, claimed that the witnesses against him were lying." *State* v. *Stevenson*, 269 Conn. 563, 594, 849 A.2d 626 (2004). Thus, the prosecutor's "attempt[s] to characterize [the defendant's] defense in this manner was invited and, therefore, not harmful under our holding in *Singh*." Id.

In the overall context of the trial, it is fair to say that the alleged improprieties were relatively "limited in frequency." *State* v. *Ritrovato*, 280 Conn. 36, 67, 905 A.2d 1079 (2006); see id., 66–67 (holding that one question regarding victim's credibility answered by expert witness in cross-examination and brief reference to her

testimony in closing argument meant that improprieties were not frequent). The comments also were not severe. "In determining whether prosecutorial impropriety is severe, we consider whether defense counsel objected to the improper remarks, requested curative instructions, or moved for a mistrial. . . . We also consider whether the impropriety was blatantly egregious or inexcusable." (Citation omitted; internal quotations marks omitted.) *State* v. *Ciullo*, supra, 314 Conn. 59. We consider the lack of objection by the defendant to the allegedly improper comments as a strong indication that they did not carry substantial weight in the course of the trial as a whole and were not so egregious that they caused the defendant harm.

Because the defendant took no curative actions, and did not ask for any such measures from the trial court, he "bears much of the responsibility for the fact that [the improprieties went] uncured." Id., 61. We also find some comfort in the instructions that the trial court gave to the jury, both before and after the presentation of evidence, on witness credibility and police officer testimony.[16]

Finally, we take stock of the strength of the state's case as a whole. The outcome at trial was not a foregone conclusion, to be sure, and we do not doubt that the jury's assessment of witness credibility was a significant factor in determining its verdict. But the jury also was presented with substantial physical and testimonial evidence corroborating A's story, including photographs of marks and bruising in the exact places that aligned with her version of events, video footage substantiating her claims, and the testimony of her coworkers. Even if "[t]he state's case may not have been ironclad . . . we have never stated that the state's evidence must have been overwhelming in order to support a conclusion that prosecutorial [impropriety] did not deprive the defendant of a fair trial." (Internal quotation marks omitted.) *State* v. *Stevenson*, supra, 269 Conn. 596. We also derive confidence in the jury's ability to carefully weigh the evidence, free from prosecutorial overreach, in light of its finding of not guilty of the crime of strangulation in the second degree, which "clearly demonstrat[es] the [jury's] ability to filter out the allegedly improper statements and make independent assessments of credibility." *State* v. *Ciullo*, supra, 314 Conn. 60.

In sum, our examination of the entire record convinces us that any alleged *Singh* violation did not "so [infect] the trial with unfairness as to make the conviction a denial of due process." (Internal quotation marks omitted.) *State* v. *Singh*, supra, 259 Conn. 700. Rather, "the trial as a whole was fundamentally" fair; (internal quotation marks omitted) id.; and we firmly believe that "there is not a reasonable likelihood that the jury's verdict would have been different absent the improprie-

ties." *State* v. *Albino*, 312 Conn. 763, 792–93, 97 A.3d 478 (2014). As such, our analysis of the record pursuant to the *Williams* factors leads us to conclude that the defendant was not denied his due process right to a fair trial.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] A "tailoring argument" is used by a prosecutor to attack the credibility of a criminal defendant by asking the jury to infer that the defendant has fabricated his testimony to conform to the testimony of previous witnesses. See *Portuondo* v. *Agard*, 529 U.S. 61, 73, 120 S. Ct. 1119, 146 L. Ed. 2d 47 (2000). As we discuss later in this opinion, the case law distinguishes between two types of tailoring arguments, generic and specific. A generic tailoring argument attacks the defendant's credibility solely by reference to the fact of his presence at trial; a claim of specific tailoring, by contrast, expressly references evidence before the jury to support an inference that the defendant tailored his testimony to fit the state's case. See part II A of this opinion.

[2] Article first, § 8, of the constitution of Connecticut, as amended by articles seventeen and twenty-nine of the amendments, provides in relevant part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel . . . [and] to be confronted by the witnesses against him . . . . No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law . . . ."

[3] In accordance with our policy of protecting the privacy interests of the victims of sexual assault, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[4] For example, in a tailoring case decided by the Colorado Supreme Court, the prosecutor, in addition to making a tailoring argument in her closing rebuttal argument, asked the defendant during cross-examination, "[y]ou've had the advantage of sitting in court today and listening to all the testimony, as well as yesterday; is that correct?" *Martinez* v. *People*, 244 P.3d 135, 137 (Colo. 2010). In the present case, the defendant's claim on appeal relates solely to the prosecutor's tailoring comment in closing argument.

[5] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." This right applies to the states through the due process clause of the fourteenth amendment to the federal constitution. See, e.g., *Pointer* v. *Texas*, 380 U.S. 400, 406, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965); *State* v. *Munoz*, 233 Conn. 106, 151 n.9, 659 A.2d 683 (1995).

[6] This court in *Cassidy* observed that the prosecutor's generic tailoring argument impermissibly burdened not only the defendant's confrontation rights, but also "the defendant's exercise of his constitutional right to testify in his own behalf, an entitlement rooted in the guarantees of the fifth, sixth and fourteenth amendments to the United States constitution. See *Rock* v. *Arkansas*, 483 U.S. 44, 51–53, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987); *State* v. *Paradise*, 213 Conn. 388, 404, 567 A.2d 1221 (1990)." *State* v. *Cassidy*, supra, 236 Conn. 128 n.16. We noted that, "[b]ecause the defendant [did] not [raise] this claim," we did not base our decision on it. Id.

[7] In addition to holding that generic tailoring arguments do not violate any sixth amendment rights, *Portuondo* also rejected the defendant's claim that such arguments violated his fifth amendment right to testify on his own behalf. *Portuondo* v. *Agard*, supra, 529 U.S. 65–73. The defendant has not raised a claim under our state constitution's analogue to the fifth amendment.

[8] Justice Ginsburg dissented in *Portuondo* on the basis of her belief that generic tailoring arguments in closing arguments unduly burden a defendant's sixth amendment right to be present at trial and to confront the accusers against him, and do not aid the jury in its truth-seeking function because a "prosecutorial comment . . . tied only to the defendant's presence in the courtroom and not to his actual testimony" does not assist the jury in "sort[ing] those who tailor their testimony from those who do not, much less the guilty from the innocent." Id., 77–78.

[9] Pursuant to *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the

defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original; footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40; see also *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015) (modifying third prong of *Golding*).

[10] The defendant contends that the prosecutor made "a classic generic tailoring argument," rather than a specific tailoring argument, because he explicitly referenced the defendant's presence at trial "with the benefit of hearing all the testimony that came before." We disagree. As we explained in the text of this opinion, specific tailoring occurs when a prosecutor substantiates his or her tailoring argument with express references to the evidence before the jury. See, e.g., *State* v. *Mattson*, 122 Haw. 312, 327, 226 P.3d 482 (2010) ("[b]ecause the prosecution referred to specific evidence presented at trial *in addition* to referring to [the defendant's] presence at trial, it cannot be said that the prosecutor's remarks during closing argument constituted a 'generic accusation' that [the defendant] tailored his testimony based *solely* on his presence at trial" [emphasis in original]).

[11] The defendant does not raise a claim on appeal that *specific* tailoring arguments violate the state constitution. To the extent that the defendant contends in his reply brief that the Connecticut constitution prohibits the state from making *any* reference to the defendant's presence at trial as part of a tailoring argument, generic or specific, we decline to address this claim because it was raised for the first time in the defendant's reply brief. See, e.g., *State* v. *Devalda*, 306 Conn. 494, 519 n.26, 50 A.3d 882 (2012) (declining to review claim "because it is well settled that claims that are not raised in parties' main briefs, but instead are raised for the first time in reply briefs, ordinarily are considered abandoned").

[12] We can review this unpreserved claim because, "under settled law, a defendant who fails to preserve claims of prosecutorial [impropriety] need not seek to prevail under the specific requirements of *State* v. *Golding*, [supra, 213 Conn. 239–40], and, similarly, it is unnecessary for a reviewing court to apply the four-pronged *Golding* test." (Internal quotation marks omitted.) *State* v. *Payne*, 303 Conn. 538, 560, 34 A.3d 370 (2012).

[13] "[T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment . . . for reasons of policy." *State* v. *Ruocco*, 322 Conn. 796, 803, 144 A.3d 354 (2016).

[14] In support of this claim, the defendant points to a number of exchanges on cross-examination between himself and the prosecutor in which the prosecutor challenged the inconsistencies between his and Comeau's testimonies, including, inter alia, the prosecutor's asking whether Comeau's testimony was "wrong," and whether the defendant had declined to give a statement to Comeau due to his apprehension that the police "might twist or misconstrue" what he told them. The defendant also highlights the prosecutor's statement during closing argument that "[t]he defendant would have you believe that the officer lied about [what the defendant told him]. He would have you believe that the officer came in and lied . . . ." He further notes that the prosecutor argued to the jury that it had "to evaluate the credibility . . . of the defendant vis-à-vis Officer Comeau."

[15] Defense counsel did not object to the prosecutor's remarks at trial, and, therefore, we review his claim under the factors set forth in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). See *State* v. *Ciullo*, supra, 314 Conn. 35 ("[t]he consideration of the fairness of the entire trial through the *Williams* factors duplicates, and, thus makes superfluous, a separate application of the *Golding* test" [internal quotation marks omitted]).

[16] The jury was instructed that it was the sole judge of witness credibility, and it alone would determine "where the truth lies." After hearing the evidence and closing arguments, the trial court instructed the jury that "[i]t is not [the prosecutor's or defense counsel's] assessment of the credibility of the witnesses that matters, only yours." Further, the court instructed the jury that the defendant's testimony should be evaluated in the same manner as that of any other witness, and that inconsistent statements, including denials of recollection, should be evaluated only as to the credibility of the witness. The court instructed the jury that the testimony of a police officer "is entitled to no special or exclusive weight . . . ."