******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* RANDY A. WRIGHT
## (AC 47370)

Elgo, Moll and Clark, Js.

*Syllabus*

Convicted, following a jury trial, of sexual assault in the first degree, sexual assault in the second degree, and risk of injury to a child, the defendant appealed. Following the second day of trial, the defendant did not appear in court, and the court completed the trial and sentenced the defendant in absentia. On appeal, the defendant claimed, inter alia, that the evidence was insufficient to support certain of his convictions. *Held*:

The jury reasonably could have concluded that the cumulative force of the evidence established the defendant's guilt beyond a reasonable doubt, as there was sufficient evidence that the defendant's abuse of the victim occurred after the victim turned thirteen years old, as required to sustain his convictions of sexual assault in the second degree and risk of injury to a child.

The defendant's unpreserved claim that the trial court violated his constitutional rights to due process and to counsel by denying his midtrial requests for a continuance failed under the third prong of *State* v. *Golding* (213 Conn. 233), as the defendant failed to show that the alleged constitutional violations existed.

The trial court did not abuse its discretion in denying the defendant's requests for a midtrial continuance, as the court considered the status of the case, made reasonable efforts to accommodate the defendant, and marked off two days of trial testimony to allow the defendant to prepare.

The trial court did not commit plain error in failing to advise the defendant of the consequences of failing to appear and in trying and sentencing him in absentia, as the defendant's conduct constituted a waiver of his right to be present at both his trial and sentencing, and the defendant failed to make a showing that this case presented circumstances extraordinary enough to merit this court's exercise of its supervisory authority.

The trial court did not abuse its discretion in denying defense counsel's motion for a mistrial when the defendant failed to appear for the third day of trial, as the court properly concluded that the defendant had waived his right to be present when he failed to appear through no fault of the state, and the court provided a curative instruction to the jury, directing it not to draw any inferences adverse to the defendant as a result of his absence.

This court declined to review the defendant's unpreserved constitutional claim that the trial court's denial of defense counsel's motion for a mistrial

deprived the defendant of his due process rights under the federal constitution, as, pursuant to the first prong of *Golding*, the record was inadequate for review.

This court declined to review the defendant's unpreserved claim that the trial court committed plain error by not sua sponte discharging defense counsel and declaring a mistrial as the record was inadequate for review of that claim.

This court dismissed as moot the defendant's claim that the trial court improperly relied on the rape shield statute to prevent him from cross-examining the victim about a false allegation of sexual misconduct she allegedly had made, as the defendant failed to challenge all independent bases for the trial court's ruling.

Argued June 4—officially released September 16, 2025

*Procedural History*

Information charging the defendant with two counts of the crime of risk of injury to a child and with one count each of the crimes of sexual assault in the first degree and sexual assault in the second degree, brought to the Superior Court in the judicial district of Windham, geographical area number eleven, and tried to the jury before *Swords, J.*; thereafter, the court denied the defendant's motions for a continuance; subsequently, the court denied the defendant's motion to dismiss his counsel; thereafter, the court denied the defendant's motion for a mistrial; verdict and judgment of guilty, from which the defendant appealed to this court. *Appeal dismissed in part*; *affirmed.*

*Dina S. Fisher*, assigned counsel, for the appellant (defendant).

*Danielle Koch*, assistant state's attorney, with whom, on the brief, were *Anne Mahoney*, state's attorney, and *Angela Macchiarulo*, for the appellee (state).

*Opinion*

CLARK, J. The defendant, Randy A. Wright, appeals from the judgment of conviction, rendered after a jury trial, of one count of sexual assault in the first degree

in violation of General Statutes § 53a-70 (a) (2),[1] one count of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1),[2] and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[3] On appeal, the defendant claims that (1) the evidence was insufficient to support his conviction of sexual assault in the second degree and one of his convictions of risk of injury to a child, (2) the trial court improperly denied his midtrial request for a

---

[1] General Statutes § 53a-70 provides in relevant part: "(a) A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . .

"(b) . . . (2) Sexual assault in the first degree is a class A felony if . . . the offense is a violation of subdivision (2) of subsection (a) of this section. Any person found guilty under said subdivision . . . (2) shall be sentenced to a term of imprisonment . . . of which five years of the sentence imposed may not be suspended or reduced by the court if the victim is under sixteen years of age."

We note that § 53a-70 has been amended by the legislature since the events underlying the present case. See Public Acts 2015, No. 15-211, § 16. This amendment, however, has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[2] General Statutes § 53a-71 provides in relevant part: "(a) A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and: (1) Such other person is thirteen years of age or older but under sixteen years of age and the actor is more than three years older than such other person . . . .

"(b) Sexual assault in the second degree is a class C felony or, if the victim of the offense is under sixteen years of age, a class B felony, and any person found guilty under this section shall be sentenced to a term of imprisonment of which nine months of the sentence imposed may not be suspended or reduced by the court."

[3] General Statutes § 53-21 provides in relevant part: "(a) Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony . . . except that, if the violation is of subdivision (2) of this subsection and the victim of the offense is under thirteen years of age, such person shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court."

lengthy continuance in order to seek new counsel or prepare to represent himself, (3) the trial court erred in failing to advise him of the consequences of failing to appear and in trying and sentencing him in absentia after he absconded during his trial, (4) the trial court improperly denied the request by the defendant's counsel, Vincent Fazzone, for a mistrial when the defendant failed to appear on the second day of evidence, (5) the trial court improperly failed to sua sponte declare a mistrial and remove Fazzone as defense counsel, and (6) the trial court improperly prevented Fazzone from cross-examining the victim about a prior accusation of sexual misconduct that she allegedly had made. We dismiss the appeal as to the defendant's sixth claim and otherwise affirm the judgment of the court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to this appeal. The victim[4] was born on September 14, 1998, and the defendant was born on September 24, 1973. The defendant was a friend of the victim's father, T, and the victim had known the defendant for her entire life. T and the victim's mother, G, are divorced. Following the divorce, T moved out of the family home, and the victim and her sister continued to reside with G. The defendant began a romantic relationship with G and moved into the home, at which point in time the victim was approximately nine years old. Beginning when the victim was nine years old, and at least once

---

[4] In accordance with our policy of protecting the privacy interests of victims of sexual assault and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

per week for several years after that, the defendant touched the victim inappropriately when the two of them were in her bedroom. The touching began as a back massage during which the defendant removed the victim's bra, but eventually progressed to touching the victim's breasts and clitoris.

Although the victim and the defendant were largely alone when this touching occurred, on one occasion a family friend, A, who was residing in the home, walked in on the two of them and observed the defendant without a shirt on, laying on the victim's bed with the victim in a "cuddling position." A ran out of the room and downstairs to tell G what she had seen, but the defendant ran out after her and denied wrongdoing; an argument ensued. G did not believe A and did not call the police. On another occasion, the victim told her former boyfriend, C,[5] that the defendant had touched her breasts and "fingered" her but made C promise not to tell anyone. The defendant's touching of the victim continued until approximately September, 2012, at which point the victim moved out of the home and went to live with T. The following month, the victim told T that the defendant had touched her inappropriately, and T subsequently took the victim to the police station so that she could make a statement. In her statement, the victim described an occasion on which the defendant had given her a back massage, undone her bra, and touched her vagina. She also stated that the defendant had removed her bra on several occasions in the past.

The defendant was subsequently arrested and tried before a jury of six on November 5, 6 and 10, 2014.

[5] Although we refer to C as the victim's former boyfriend, there was conflicting evidence on whether C and the victim were still in a romantic relationship at the time that she told him about the defendant's abuse. C testified that the victim told him that the defendant had touched her about four or five months after C and the victim had broken up. The victim, however, testified that C was "my boyfriend at the time" that she told him of the abuse.

Fazzone represented the defendant throughout the trial. On the morning of November 6, 2014, following the first day of evidence, the defendant filed a handwritten "motion for dismissal/removal of counsel," in which he asked the court to discharge Fazzone for "misrepresentation and gross negligence of my case." Shortly thereafter on that same day, the parties appeared before the court, *Swords, J.*, to address the defendant's motion. During the hearing,[6] the defendant expressed his view that Fazzone was not providing him with adequate representation and requested that the court grant him a thirty day or, in the alternative, fifteen day continuance so that he could find new counsel or prepare to represent himself. The court denied these requests but—after the defendant requested that the court give him at least "a couple days to . . . pull it together"—granted the defendant a continuance until the following Monday, November 10, at which time the court stated that it intended to canvass him regarding his ability to represent himself.

The defendant did not appear in court on November 10. Fazzone represented to the court that he had attempted to call the defendant over the weekend but had not been able to reach him. The court adjourned for approximately twenty minutes to allow the defendant additional time to appear and to permit Fazzone to attempt to contact him. When court reconvened, Fazzone stated that he had called the defendant again and had been unable to reach him but that he had left a voicemail telling the defendant that he needed to come to court immediately. Fazzone then orally moved for a mistrial "in light of my client's . . . absence," stating that he "would not want the jury to see [the defendant's] absence as any indication of guilt in any way." The court denied the motion, stating that, "[i]f there is any

_____

[6] We discuss this hearing in greater detail in part II of this opinion.

necessity for a mistrial, it's been created by the defendant himself, and the court certainly finds it's not—does not reach the threshold of manifest necessity . . . ." The court then adjourned for another twenty minutes to afford the defendant a final opportunity to appear, which he did not. Fazzone stated that he had again attempted, without success, to get in touch with the defendant via phone. The court accordingly found that the defendant had "intentionally absented himself in an effort to thwart the proceedings in this matter" and had thus waived his right to be present.

The trial thereafter resumed and proceeded in the defendant's absence. Before the resumption of evidence, the court instructed the jury that it was not to speculate as to why the defendant was not present or to draw any inferences adverse to the defendant as a result of his absence. The state rested after calling one additional witness and the defense rested without calling any witnesses. The jury returned a verdict of guilty on all charges on that same day, November 10, after deliberating for approximately thirty-five minutes.

On January 6, 2015, the defendant was sentenced to a total effective sentence of twenty years of incarceration, five years and nine months of which were a mandatory minimum, followed by twenty-five years of special parole. He was also ordered to register as a sex offender for life. The defendant did not appear for his sentencing. The court found that, "although there is no evidence . . . that the defendant was aware of the sentencing which is to take place today, there is also no evidence . . . that the defendant had made any inquiry or any attempts to find out the status of the case or the fact that the sentencing would be held today. Significantly, there's also no evidence . . . that the defendant is either unable or incapable of attending today's proceedings." Accordingly, the court concluded that the defendant had again "voluntarily, wilfully, and intentionally

absented himself" from the proceeding and accordingly had waived his right to be addressed personally at sentencing and to speak in mitigation of his punishment. The court stayed the execution of the sentence pending the defendant's reapprehension.

Later that month, the defendant was apprehended. On January 20, 2015, the defendant was arraigned before the court, *Riley, J.*, on a charge of failure to appear in the first degree in violation of General Statutes § 53a-172.[7] At that time, the court lifted the stay of execution on the sentence that previously had been imposed by Judge Swords, and imposed a standing criminal protective order on the victim's behalf, to remain in effect until 2075. The defendant did not timely appeal from his conviction or seek sentence review.

On November 4, 2016, the defendant filed a petition for a writ of habeas corpus and, thereafter, filed an amended petition on October 7, 2019. See generally *Wright* v. *Commissioner of Correction*, Superior Court, judicial district of Tolland, Docket No. CV-16-4008455-S. In his operative amended petition, the defendant claimed that Fazzone had rendered ineffective assistance of counsel in various ways, including by failing to file a direct appeal of his conviction and by failing to file an application for sentence review. On June 6, 2023, following a trial, the habeas court, *Bhatt, J.*, issued a memorandum of decision in which it granted in part and denied in part the defendant's petition. The habeas court concluded that Fazzone had rendered ineffective assistance by failing to file appeal paperwork on the defendant's behalf and by failing to seek sentence

---

[7] General Statutes § 53a-172 provides in relevant part: "(a) A person is guilty of failure to appear in the first degree when (1) while charged with the commission of a felony and while out on bail or released under other procedure of law, such person wilfully fails to appear when legally called according to the terms of such person's bail bond or promise to appear . . . ."

review but otherwise rejected the defendant's claims of ineffective assistance. The habeas court accordingly restored the defendant's right to appeal from his conviction and to seek sentence review. On August 3, 2023, the defendant filed a direct appeal from his conviction with our Supreme Court, which transferred the appeal to this court pursuant to Practice Book § 65-1.[8] Additional facts and procedural history will be set forth as necessary.

## I

We begin with the defendant's claim that there was insufficient evidence to support his conviction of sexual assault in the second degree and one of his convictions of risk of injury to a child.[9] In support of this claim, the defendant argues that it is "undisputed" that his assaults of the victim stopped when the victim was twelve years old. As such, he argues, there was insufficient evidence to sustain his convictions under § 53a-71 (a) (1), which requires that the victim be between thirteen and sixteen years old,[10] and under count four of the information, which charged him with a violation of § 53-21 (a) (2) on the basis of conduct that was alleged to have occurred on and after the victim's thirteenth birthday. We disagree.

---

[8] The defendant has also filed with this court an appeal from the judgment of the habeas court denying in part his amended petition for a writ of habeas corpus. See *Wright* v. *Commissioner of Correction*, Connecticut Appellate Court, Docket No. AC 46768 (August 7, 2023). That appeal was argued before this court on November 21, 2024. On January 14, 2025, this court sua sponte stayed resolution of the defendant's habeas appeal pending final resolution of the present appeal.

[9] Although this is the final claim that the defendant raises in his principal appellate brief, "[w]e begin with this issue because if the defendant prevails on the sufficiency claim, [he] is entitled to a directed judgment of acquittal rather than to a new trial" on the counts for which he claims there was insufficient evidence. *State* v. *Moore*, 100 Conn. App. 122, 126 n.2, 917 A.2d 564 (2007).

[10] See footnote 2 of this opinion.

The following legal principles govern our review of this claim. "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a [two part] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether [on] the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State v. Ziolkowski*, 351 Conn. 143, 160, 329 A.3d 939 (2025). "We note that the [finder of fact] must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the [finder of fact] to conclude that a basic fact or an inferred fact is true, the [finder of fact] is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"When there is conflicting evidence . . . it is the exclusive province of the . . . trier of fact, to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony. . . . Questions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . We must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude . . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would

support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Williams*, 200 Conn. App. 427, 447–48, 238 A.3d 797, cert. denied, 335 Conn. 974, 240 A.3d 676 (2020).

The victim, as we have explained, was born on September 14, 1998. Count two of the information charged the defendant with a violation of § 53a-71 (a) (1), and count four charged him with a violation of § 53-21 (a) (2), on the basis of his having had sexual intercourse with, and contact with the intimate parts of, the victim "on unspecified dates from about September 14, 2011 [the victim's thirteenth birthday] to about November 6, 2012[11] . . . ." (Footnote added.) The victim testified that the defendant's touching of her continued until just before she moved out of the family home and went to live with T. She further testified that at the time she moved out, she was twelve years old. T, however, testified that the victim came to live with him in September, 2012, at which time the victim would have been at least thirteen, if not fourteen, years old. Moreover, on cross-examination, the victim testified that she had moved in with T in 2012, to which Fazzone replied: "Well, it just seems after doing the math that you would actually—when you moved in with your father, you weren't twelve, you were fourteen. Are we correct by saying that? I'm not putting pressure on you." The victim replied: "I'm not sure."

The defendant is correct that the victim initially testified that she was twelve when she moved out and the defendant's abuse ended, but he is not correct that this testimony was "undisputed." To the contrary, there was ample other evidence—including the victim's own testimony on cross-examination—that she did not move out

---

[11] November 6, 2012, is the date of the victim's statement to the police.

until approximately one year after she turned thirteen. Although the evidence was somewhat equivocal on the victim's precise age at the time the defendant ceased touching her, "[i]t is well settled . . . that [e]vidence is not insufficient . . . because it is conflicting or inconsistent. . . . Rather, the [finder of fact] [weighs] the conflicting evidence and . . . can decide what— all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) *State* v. *Montana*, 179 Conn. App. 261, 266, 178 A.3d 1119, cert. denied, 328 Conn. 911, 178 A.3d 1042 (2018). Construing the evidence in the light most favorable to sustaining the verdict, the jury reasonably could have concluded that the defendant continued to touch the victim inappropriately until roughly one year after her thirteenth birthday. Accordingly, there was sufficient evidence both that the defendant's abuse continued until after the victim turned thirteen years old, as required to sustain the defendant's conviction for sexual assault in the second degree, and that the defendant had contact with the victim's intimate parts between her thirteenth birthday and November 6, 2012, as alleged in count four of the information. The defendant's claim therefore fails.

II

Next, the defendant claims that the trial court violated his constitutional rights to due process and to counsel, and, in the alternative, that the court abused its discretion, when it denied his midtrial requests for either a thirty day or a fifteen day continuance. Because the defendant did not preserve the constitutional portion of this claim before the trial court, he seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). We are not persuaded by the defendant's claim.

The following additional procedural history is relevant. The defendant's first appearance in this case

occurred in January, 2013, and the defendant was tried in November, 2014. At the time that the defendant made his request for a continuance, on November 6, 2014, the jury had been empaneled and sworn, and the state had presented testimony from: the victim; T; Erica Kesselman, a physician and expert in the field of pediatric female genitalia]; A; George Grauer, a police officer; and C. At the close of the first day of evidence on November 5, the state had informed the court that it "ha[d] one final witness for tomorrow who will be ready at 10 a.m."

During his cross-examination of the victim on November 5, Fazzone asked the victim whether she had "accused other people of doing this to you as well." The state objected on relevance grounds, and the court excused the jury for the morning recess while it heard argument on the objection. When asked by the court to justify his line of questioning, Fazzone appeared to assert that, on a previous occasion, T had reprimanded the victim for dressing inappropriately, and the victim had then retaliated by falsely reporting to officials at her school that T had committed unspecified sexual misconduct against her.[12] The court pressed Fazzone

---

[12] Specifically, the following colloquy occurred:

"The Court: All right. Mr. Fazzone, what was your claim with respect to that line of questioning?

"[Defense Counsel]: Yes, Your Honor. That there was on one occasion where [the victim's] father—she had reported to the school that—it's my understanding anyway, that she had reported to the school that her father had reprimanded her when she was not dressed or appropriately dressed. And she took it to the attention of the school board and, apparently, her father—it was found that he—he actually—that this didn't—did not occur, or that he did nothing wrong. That's my understanding.

"The Court: That who did nothing wrong?

"[Defense Counsel]: The father. I apologize. The father—the father—I don't know. These are just—I just—this is something I wanted to explore on—

"The Court: All right. What's your claim? The father did what?

"[Defense Counsel]: That the father—at one point when they were together in the home, the father, while trying to reprimand—reprimand [the victim], had done so—[the victim] had said that the father had reprimanded her

as to whether he had a good faith basis for believing that the victim had in fact made such an accusation; Fazzone conferred briefly with the defendant and then asserted that the defendant had heard it from G, who had in turn heard it from T. The court, after confirming that Fazzone had not himself spoken to G, observed that "everything that you reported to the court is at a minimum triple hearsay. In other words, you got it from your client, who allegedly got it from some other party, who allegedly got it from some other party." Fazzone then attempted further to justify the relevance of his inquiry by stating that, "if this is true and [T] was found guilty of this, that would be one thing. But if he was not found guilty, I think it's relevant to the case at hand." The court responded: "Well, you're assuming a lot of things. You're assuming not only that this happened, you're assuming then a complaint was made to a law enforcement authority that then pursued an investigation and then made an arrest and then it was brought to court and then he was somehow acquitted of that charge. So, there's a lot of assumptions in there."

Fazzone then asserted that he had also learned from "a Jennifer DuCharme" that the victim "likes to take things to extreme; she had a friend . . . who had a sixteen year old brother who sexually touched her. . . . And [the victim] did not say anything until six months later. And then the boy moved to Providence, Rhode Island." The court responded that there was nothing in this offer of proof that would indicate that, even if the

when she was not dressed. And that she then went and said to the school officials that she felt that she had been violated, that her father had done something wrong, and that type of thing. So, I wanted to see if that—I think it's relevant, Your Honor. I'm not trying to be difficult, but I think it's relevant to the case.

"The Court: How—how—

"[Defense Counsel]: It shows a pattern. It shows a pattern of possible— you know, she's not being truthful as far as these allegations and it's a pattern of not being truthful of these types of situations."

victim had made such a complaint against her friend's brother, this complaint was false. Fazzone replied: "Fair enough . . . . If she's saying that, I understand. You know, if she's saying that didn't happen, I don't want to rock the boat. . . . I agree, Your Honor. But as far as [T] goes, I stand by my contentions." The court then sustained the state's objection. It ruled that it was not going to permit Fazzone to ask the victim about the alleged false accusation of sexual misconduct that she had made against T, because it determined that Fazzone lacked a good faith basis for asking that question, and "a good faith basis is a minimum for that kind of attack on credibility, notwithstanding the rape shield statute."[13] The court explained that "that inquiry would be more prejudicial than probative because there is no good faith basis based upon what [Fazzone] indicated."

At the outset of the hearing on the defendant's motion to remove Fazzone as his counsel on November 6, the defendant requested that the court grant him a continuance of "approximately thirty days so I could pull it together and possibly find other counsel or figure out where I need to go from here." The court responded that, in order to grant that request, it would have to grant a mistrial because the jury had been empaneled and "we've heard approximately three-quarters or more of the state's case-in-chief." The court then inquired as to why the defendant wanted to discharge Fazzone. The

---

[13] The rape shield statute, General Statutes (Rev. to 2013) § 54-86f, "prohibits the admission of a victim's prior sexual conduct [in a prosecution for sexual assault under §§ 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive] . . . unless such evidence is . . . offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of . . . injury, or . . . offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct . . . or . . . otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights." (Internal quotation marks omitted.) *State* v. *Shaw*, 312 Conn. 85, 103–104, 90 A.3d 936 (2014).

defendant responded in relevant part: "Your Honor . . . today's supposed to be the beginning of my defense. Mr. Fazzone has no witnesses for me; I have no one speaking on my behalf today. There's nobody here. . . . Through [Fazzone's] performance, [not] being able to . . . introduce evidence properly, formulate questions properly, being prepared to the best of, I believe, his ability, I don't feel that I'm getting represented to—fair. . . . I feel like I was misled that he was actually a trial lawyer, that he had this under control all throughout the eighteen months. . . . And then for today, that there's no witnesses, that's—he's making a mockery of the court in my eyes and I would, I guess, formally request a mistrial so that way we could—I could find someone that's more adept for my situation." The court asked the defendant which specific witnesses he had anticipated would be called in his defense. The defendant identified G, a person named Heather Green, T, and Jennifer DuCharme, giving brief offers of proof for each.

The defendant claimed that G's testimony was "a pivotal point in [his] defense" because she did not believe the victim's account, as evidenced by the fact that she had remained in a relationship with the defendant for more than one year after the victim first made her allegations. At the close of the previous day of testimony, the state had represented to the court that it had been unable to locate and subpoena G and thus had no ability to produce her. When the court observed during the November 6 hearing that, "[G], from what I understand, has gone to parts unknown," the defendant replied: "She's in—if you look on her Facebook account, Your Honor, she's in Agawam [Massachusetts]. I'm sure—the daughter, the mother, half of her family was here the other day. I'm sure if they tried, they could . . . find her. I mean, it's not like she fell off the face of the earth, Your Honor." With respect to Green, the

defendant claimed, without elaboration, that she would "testify under oath that [the victim] lied . . . about me touching her."

The defendant claimed that DuCharme "could come in here and testify that [the victim] actually accused somebody else. This is firsthand information. . . . It came from—this came directly from her. [The victim] told [DuCharme] that another child had touched her. She made another allegation. . . . So, the allegations of—[the victim] has done this before. This child has called—cried wolf on other people. They didn't believe her then. . . . [The victim] has a habitual lying process. Tried to get an expert witness in here to testify about that; never happened." As for T, the defendant stated: "[T] . . . he reprimanded [the victim] while she was half dressed. [The victim] went to the school to do that. There's documentation at the school through the counselor there. I've asked counsel to get it. Your Honor, there's nothing there."

After the defendant made these offers of proof with respect to DuCharme and T, the court responded that Fazzone had attempted to cross-examine the victim the previous day regarding the allegations of sexual misconduct she allegedly had made to DuCharme, and to her school regarding T, and that the court had already determined that there was no good faith basis to question the victim about the allegation regarding T. The court further observed that, "even if there was a good faith basis, there would need to be a showing that this evidence was admissible, despite the rape shield statute. And that's—that's a fairly hard standard to overcome." With respect to the defendant's offer of proof as to G, the court stated that the testimony the defendant sought to elicit—that G did not believe the victim's story—was already before the jury through the testimony of A.

The court then proceeded to deny the defendant's request for a thirty day continuance and/or mistrial.

The court stated that it based its decision on several factors: the fact that the jury had already been selected; that the jury had already heard a full day of evidence and the majority of the state's case-in-chief; and that, on the basis of the offers of proof put forward by Fazzone the previous day, the testimony that the defendant hoped that DuCharme and T would give would likely be inadmissible. The court further reasoned that Fazzone had "impeached the victim's credibility by her inconsistencies—or prior inconsistencies, and he does have a trial strategy directed to putting in front of the jury the victim's motive to lie here."

The defendant then indicated that he was contemplating representing himself and requested a fifteen day continuance "so I could try to pull it together if I'm going to lead this." The court denied this request as well. It stated: "I have observed you throughout this trial, starting with jury selection, consulting with Mr. Fazzone repeatedly, even during the middle of the examination and cross-examination of witnesses in this case. You've been an active participant, even though Mr. Fazzone's been the one that's been up in front of the jury and asking the questions. So as far as I can tell, you are fully conversant in the case here and the trial strategy." The court further reasoned that a fifteen day continuance was unwarranted because the case had been pending since January, 2013. Finally, the defendant requested "a couple days to please pull it together," which the court granted. Specifically, the court granted the defendant a continuance until 10 a.m. the following Monday, November 10, and indicated that, on that date, it would conduct a canvass to determine if the defendant was able to represent himself. The court further indicated that it would be willing to appoint Fazzone as standby counsel if the defendant elected to represent himself.

## A

We begin with the defendant's unpreserved constitutional claim. "Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of a constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . [T]he inability to meet any one prong requires a determination that the defendant's claim must fail. . . . The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Sweet*, 214 Conn. App. 679, 693, 280 A.3d 1243, cert. denied, 345 Conn. 920, 284 A.3d 983 (2022). For present purposes, "[w]e assume, without deciding, that the [defendant's] claim is reviewable under the first two prongs of *Golding* . . . and we proceed to determine whether the [defendant] has met the third requirement of *Golding*, i.e., that a constitutional violation exists and deprived [him] of a fair trial." (Citation omitted.) *In re Na-Ki J.*, 222 Conn. App. 1, 7–8, 303 A.3d 1206, cert. denied, 348 Conn. 929, 304 A.3d 860 (2023).

"Although [a] reviewing court ordinarily analyzes a denial of a continuance in terms of whether the court has abused its discretion . . . [t]his is so where the denial is not directly linked to a specific constitutional right. . . . If . . . the denial of a continuance is directly linked to the deprivation of a specific constitutional right, some courts analyze the denial in terms of whether there has been a denial of [such right]. . . .

Even if the denial of a motion for a continuance . . . can be directly linked to a claim of a denial of a specific constitutional right [however], if the reasons given for the continuance do not support any interference with the specific constitutional right, the court's analysis will revolve around whether the trial court abused its discretion. . . . In other words, the constitutional right alleged to have been violated must be shown, not merely alleged." (Citation omitted; internal quotation marks omitted.) *Davis* v. *Commissioner of Correction*, 225 Conn. App. 263, 273–74, 315 A.3d 426, cert. denied, 349 Conn. 917, 316 A.3d 741 (2024).

The defendant argues that Fazzone's performance during the first day of evidence had been so poor[14] that, by refusing to grant the defendant a thirty or fifteen day continuance in order to seek new counsel or prepare to represent himself, the trial court violated his rights to counsel and to due process under the sixth and fourteenth amendments to the federal constitution. We disagree. The defendant cites no case to support the proposition that a court violates a criminal defendant's constitutional rights to counsel or to due process when

---

[14] To the extent that the defendant asks us to conclude that Fazzone rendered constitutionally deficient performance in the manner in which he conducted the defendant's trial—introducing exhibits, calling and cross-examining witnesses, and choosing which theories to advance—it is not proper for us to review such a claim in the context of this direct appeal. It is well established that, "[a]lmost without exception . . . a claim of ineffective assistance of counsel must be raised by way of habeas corpus, rather than by direct appeal, because of the need for a full evidentiary record for such [a] claim. . . . On the rare occasions that we have addressed an ineffective assistance of counsel claim on direct appeal, we have limited our review to allegations that the defendant's sixth amendment rights had been jeopardized by the actions of the *trial court*, rather than by those of his counsel." (Emphasis in original; internal quotation marks omitted.) *State* v. *Vega*, 259 Conn. 374, 385, 788 A.2d 1221, cert. denied, 537 U.S. 836, 123 S. Ct. 152, 154 L. Ed. 2d 56 (2002). "[W]e underscore that," in the context of our review of the present claim, "our review is of the actions of the trial court, not of the actions of defense counsel." Id.

it reasonably[15] refuses such a midtrial request. To the contrary, it is well established that "[a] defendant has no unbridled right to discharge counsel on the eve of trial"; (emphasis omitted; internal quotation marks omitted) *State* v. *Drakeford*, 202 Conn. 75, 83, 519 A.2d 1194 (1987); and that, "[a]fter the commencement of trial, neither a right to be represented by counsel of choice nor a right to due process entitle a defendant to a continuance on demand." (Internal quotation marks omitted.) *State* v. *Crawley*, 138 Conn. App. 124, 135, 50 A.3d 349, cert. denied, 307 Conn. 925, 55 A.3d 565 (2012). Moreover—in light of the general rule that ineffective assistance of counsel claims are properly addressed in a habeas corpus proceeding—this court has refused to require that a court overseeing a criminal trial, in considering a defendant's request for a continuance in order to secure new counsel, analyze whether the defendant's current counsel is constitutionally ineffective. See *State* v. *Ross V.*, 110 Conn. App. 1, 9, 953 A.2d 945, cert. denied, 289 Conn. 939, 958 A.2d 1247 (2008); see also, e.g., *State* v. *Gonzalez*, 205 Conn. 673, 683–84, 535 A.2d 345 (1987) ("The defendant argues that his counsel's alleged failure to represent the defendant zealously required the trial court to allow him to discharge his attorney. . . . Since this argument is, in essence, a disguised allegation of ineffective assistance of counsel, it is governed by our decisions requiring such claims to be pursued on a petition for a new trial or on a petition for a writ of habeas corpus . . . ."). Finally, our Supreme Court has also recognized that, "[a]fter trial commences, consistent with the defendant's sharply curtailed freedom to elect self-representation . . . a trial court is not obligated to delay the proceedings in order to enable or facilitate a belated request

---

[15] The defendant characterizes the trial court's refusal to grant his continuance requests as "arbitrary and capricious," but—for the reasons we set forth in part II B of this opinion—we disagree.

for self-representation." (Citations omitted; internal quotation marks omitted.) *State* v. *Bush*, 325 Conn. 272, 320–21, 157 A.3d 586 (2017).[16] We further note that our review of the record does not indicate that the defendant had made a clear and unequivocal request to represent himself at the time he made his continuance requests, which was the minimum required in order for his constitutional right to self-representation to attach. See, e.g., *Abrams* v. *Commissioner of Correction*, 192 Conn. App. 850, 862, 218 A.3d 729, cert. denied, 333 Conn. 939, 218 A.3d 1046 (2019). As such, the defendant has failed to show that the trial court violated his constitutional rights to due process or to counsel, and his claim accordingly fails under the third prong of *Golding*. See, e.g., *Davis* v. *Commissioner of Correction*, supra, 225 Conn. App. 276–78.

B

In the alternative, the defendant claims that the denial of his continuance requests constituted an abuse of discretion. In general, "[t]he determination of whether to grant a continuance is within the discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion. . . . A reviewing court is bound by the principle that [e]very reasonable presumption in

---

[16] Although the defendant does not specifically argue that the trial court's denial of his continuance requests violated his right to self-representation, we nonetheless consider the principles articulated by our Supreme Court in *Bush* to be relevant to our resolution of this claim. The defendant challenges both the denial of his request for a thirty day continuance (which he sought for the purpose of retaining new counsel) and his request for a fifteen day continuance (which he sought for the purpose of preparing to represent himself). Moreover, the sixth amendment right to counsel, which the defendant argues that the trial court violated, affords criminal defendants a correlative right to self-representation. See *State* v. *Bush*, supra, 325 Conn. 317–18. Finally, as we discuss herein, at certain points in his principal appellate brief, the defendant contends that the trial court's denial of his continuance requests deprived him of the opportunity to adequately prepare if he were to proceed in a self-represented capacity.

favor of the proper exercise of the trial court's discretion will be made. . . . To prove an abuse of discretion, an appellant must show that the trial court's denial of a request for a continuance was arbitrary . . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, *particularly in the reasons presented to the trial judge at the time the request is denied.* . . .

"Among the factors that may enter into the court's exercise of discretion in considering a request for a continuance are the timeliness of the request for continuance; the likely length of the delay . . . the impact of delay on the litigants, witnesses, opposing counsel and the court; the perceived legitimacy of the reasons proffered in support of the request . . . the timing of the request; the likelihood that the denial would substantially impair the defendant's ability to defend himself; [and] the availability of other, adequately equipped and prepared counsel to try the case . . . . We are especially hesitant to find an abuse of discretion where the court has denied a motion for a continuance made on the day of the trial. . . . In order to work a delay by a last minute [replacement] of counsel there must exist exceptional circumstances." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Ross V.*, supra, 110 Conn. App. 7–8. Moreover, "a denial of a continuance to enable a midtrial election of self-representation is not an abuse of discretion if the trial court has thoughtfully considered the status of the case and otherwise made reasonable efforts to accommodate the needs of the defendant, such as the provision of standby counsel or breaks during the scheduled trial itself." *State* v. *Bush*, supra, 325 Conn. 322.

In support of his claim that the court abused its discretion in denying his continuance requests, the defendant argues that Fazzone's performance throughout the

trial thus far had been "bumbling and inept," and that, "by the end of the first day of trial, Fazzone had demonstrated to the court, the jury, and the defendant that he had never tried a case before, much less one as serious as a sexual assault claim." He argues that the length of the delay he sought did not present an "insurmountable obstacle" under the circumstances, that a substantial continuance was warranted in light of the complexity and gravity of the charges against him, and that if he had to continue with Fazzone as his counsel he would have been effectively "exposed to a trial without a defense." He further contends that the brief continuance the trial court granted him was insufficient "to line up witnesses and prepare (if need be) to proceed [in a self-represented capacity] . . . under these circumstances." He also argues that he was not at fault for the belated timing of the request because he was only able to "realize the extent of Fazzone's ineffectiveness and lack of preparation" after observing his performance on the first day of evidence and that his request for a continuance was made sincerely and not for the purpose of delay.

We are not persuaded by the defendant's arguments. At the time that the defendant made his continuance requests, his trial was underway, and a duly empaneled jury had heard testimony from the victim and all but one of the state's other witnesses. Under such circumstances, we are "especially hesitant" to conclude that the court's denial of the defendant's requests constituted an abuse of its discretion. (Internal quotation marks omitted.) *State* v. *Ross V.*, supra, 110 Conn. App. 8. Although the defendant attempts to downplay the delay that his requested continuances would have caused as a mere "inconvenience" that would "not [have] present[ed] an insurmountable obstacle" to the court, jury, state and witnesses, the trial court was well within its discretion to consider the likelihood that

pausing the proceedings for thirty or even fifteen days could lead to jury loss and a mistrial.[17] See *State* v. *Ross V.*, supra, 8; see also, e.g., *State* v. *Komisarjevsky*, 338 Conn. 526, 613, 258 A.3d 1166 (mistrial is "drastic remedy" that, though "permitted under the rules of practice . . . is not favored" (internal quotation marks omitted)), cert. denied, U.S. , 142 S. Ct. 617, 211 L. Ed. 2d 384 (2021). Moreover, the case was more than one and one-half years old, and this court has upheld denials of continuance requests for younger cases. See, e.g., *Cinotti* v. *Divers*, 151 Conn. App. 297, 306, 94 A.3d 1212 (upholding denial of continuance where, inter alia, case had been pending for approximately one year at time request was made), cert. denied, 314 Conn. 924, 100 A.3d 855 (2014); *State* v. *Youngs*, 97 Conn. App. 348, 368, 904 A.2d 1240 (same), cert. denied, 280 Conn. 930, 909 A.2d 959 (2006). Although we are mindful of the defendant's contention that he was not responsible for the timing of his requests, and the record does not indicate that he made his requests in bad faith, "these circumstances do not in themselves warrant a finding that the trial court abused its discretion." (Internal quotation marks omitted.) *State* v. *Beckenbach*, 198 Conn. 43, 50, 501 A.2d 752 (1985).

The court was entitled reasonably to conclude that the reasons proffered by the defendant for the lengthy continuances he sought—Fazzone's performance, the defendant's desire to secure new counsel and additional witnesses, and the defendant's need to prepare if he were to represent himself—were not sufficient to overcome these weighty countervailing considerations. As we previously have explained, this court has determined that a court overseeing a criminal trial is not

---

[17] We note that, on the first day of jury selection, the court, *Seeley, J.*, had informed prospective jurors that they would likely need to be available for trial between approximately November 5 and 14, 2014. The court, *Swords, J.*, reiterated this estimate to the venire on the second day of jury selection.

required to assess defense counsel's constitutional effectiveness in ruling on a motion for a continuance to secure new counsel. See *State* v. *Ross V.*, supra, 110 Conn. App. 9. It is also significant that the defendant did not claim actually to have found an attorney, other than Fazzone, who would be willing and able to take his case; rather, he stated that he hoped to "*possibly* find other counsel." (Emphasis added.) See, e.g., *State* v. *Hamilton*, 228 Conn. 234, 247–48, 636 A.2d 760 (1994). Moreover, the witnesses whom the defendant sought to call were witnesses whose testimony the court reasonably could have concluded was of minimal relevance and/or already before the court, for whom the defendant had provided little more than a cursory, undeveloped proffer, or for whom the defense's proposed line of questioning, the court had already concluded, lacked a good faith basis. Finally, the record reflects that the court thoughtfully considered the status of the case (as evidenced by its lengthy colloquy with the defendant and counsel regarding the defendant's concerns, the witnesses the defendant sought to call, and the various interests at stake) and that the court made reasonable efforts to accommodate the defendant, including by indicating its willingness to appoint Fazzone as standby counsel if the defendant elected to represent himself, and by marking off two days of trial testimony to allow the defendant to prepare. For all the foregoing reasons, we cannot conclude that the court's denial of the defendant's requests for a thirty or fifteen day continuance constituted an abuse of its discretion.[18]

### III

The defendant next claims that the court committed plain error when it failed at the November 6, 2014 hearing to advise him of the consequences of failing to

---

[18] "Because we have concluded that the court did not act unreasonably in denying the defendant's [continuance requests], we need not engage in harmless error analysis." *State* v. *Patel*, 186 Conn. App. 814, 825 n.4, 201 A.3d 459, cert. denied, 331 Conn. 906, 203 A.3d 569 (2019).

appear and thereafter proceeded to try and sentence him in absentia. He further claims that the court's actions deprived him of his constitutional right to be present at trial and seeks review of this unpreserved claim under *Golding*. In the alternative, the defendant asks us to exercise our supervisory authority to require that, in circumstances in which it is reasonably foreseeable that a criminal defendant will flee—such as, he argues, the present case—the trial court must advise him or her of the consequences of a failure to appear. We are not persuaded.

The following additional legal principles are relevant to our review of this claim. "In evaluating plain error claims, we must determine whether the trial court in fact committed an error and, if it did, whether that error was indeed plain in the sense that it is patent [or] readily discernable on the face of a factually adequate record, [and] also obvious in the sense of not debatable. . . . [T]he plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under the plain error doctrine unless he demonstrates that the claimed error is *both* so clear *and* so harmful that a failure to reverse the judgment would result in manifest injustice." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Tahir L.*, 227 Conn. App. 653, 665, 322 A.3d 455, cert. denied, 350 Conn. 913, 324 A.3d 141 (2024). "[T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment . . . for reasons of policy." (Internal quotation

marks omitted.) *State* v. *Jamison*, 320 Conn. 589, 596, 134 A.3d 560 (2016).

With respect to the defendant's request that we exercise our supervisory authority, we are mindful that "[b]ypass doctrines permitting the review of unpreserved claims such as [*Golding*] and plain error, are generally adequate to protect the rights of the defendant and the integrity of the judicial system . . . . [T]he supervisory authority of this state's appellate courts is not intended to serve as a bypass to the bypass, permitting the review of unpreserved claims of case specific error—constitutional or not—that are not otherwise amenable to relief under *Golding* or the plain error doctrine. Rather, the integrity of the judicial system serves as a unifying principle behind the seemingly disparate use of our supervisory powers. . . . Thus, a defendant seeking review of an unpreserved claim under our supervisory authority must demonstrate that his claim is one that, as a matter of policy, is relevant to the perceived fairness of the judicial system as a whole, most typically in that it lends itself to the adoption of a procedural rule that will guide the lower courts in the administration of justice in all aspects of the criminal process." (Internal quotation marks omitted.) *State* v. *Leach*, 165 Conn. App. 28, 35–36, 138 A.3d 445, cert. denied, 323 Conn. 948, 169 A.3d 792 (2016). "Our supervisory powers are not a last bastion of hope for every untenable appeal. They are an *extraordinary* remedy to be invoked only when circumstances are such that the issue at hand, [although] not rising to the level of a constitutional violation, is nonetheless of the utmost seriousness . . . . Thus, we are more likely to invoke our supervisory powers when there is a pervasive and significant problem . . . or when the conduct or violation at issue is offensive to the sound administration of justice . . . ." (Citations omitted; emphasis in

original; internal quotation marks omitted.) *In re Ais-jaha N.*, 343 Conn. 709, 724–25, 275 A.3d 1181 (2022).

"A trial court's finding that a defendant has voluntarily absented himself from the proceedings is reviewed for an abuse of discretion. . . . It has long been settled that an accused enjoys a right both at common law and pursuant to the sixth amendment's confrontation clause to be present at all stages of trial. . . . It is also well settled that under the due process clauses of the fifth and fourteenth amendments a defendant must be allowed to be present at his trial to the extent that a fair and just hearing would be thwarted by his absence. . . . Nevertheless, the defendant's presence is not required when the right is waived. . . . [T]he trial court is authorized to direct the trial or a part thereof to be conducted in the absence of the defendant who is represented by counsel if the court determines that he has waived his right to be present. . . . Waiver is the intentional relinquishment of a known right. Waiver does not have to be express, but may consist of acts or conduct from which waiver may be implied. . . . Moreover, whether there has been an intelligent and competent waiver of the right to presence must depend, in each case, upon the particular facts and circumstances surrounding that case. . . . [W]here the accused is not in custody, the prevailing rule has been, that if, after the trial has begun in his presence, he voluntarily absents himself, this does not nullify what has been done or prevent the completion of the trial, but, on the contrary, operates as a waiver of his right to be present and leaves the court free to proceed with the trial in like manner and with like effect as if he were present." (Citations omitted; internal quotation marks omitted.) *State* v. *Hernandez*, 197 Conn. App. 257, 262–63, 231 A.3d 266, cert. denied, 335 Conn. 960,

239 A.3d 1215 (2020).[19] "[T]here can be no doubt whatever that the governmental prerogative to proceed with a trial may not be defeated by the conduct of [an] accused that prevents the trial from going forward. . . . Not only may an accused waive his right to presence by his misconduct . . . but he may also do so by simply failing to show up for the trial through no fault of the state. . . . It is reasonable to assume that a defendant who had attended his trial for several days and had knowledge of the date and time of its continuance would know that as a consequence [of his failure to appear] the trial could continue in his absence." (Citations omitted; internal quotation marks omitted.) *State* v. *Simino*, 200 Conn. 113, 128–30, 509 A.2d 1039 (1986).

---

[19] In a footnote of his principal appellate brief, the defendant contends that the record of his habeas trial—which is not part of the record in the present case, but is before this court in a separate appeal; see footnote 8 of this opinion—establishes as a matter of fact that "the defendant *thought* that the trial would be postponed if he fled, and that Fazzone had given him that impression." (Emphasis in original.) The defendant requests that we take this evidence—which he characterizes as "undisputed"—"as proof that [his] failure to appear did not constitute an intentional waiver of his rights." We decline the defendant's request.

"Judicial notice . . . meets the objective of establishing facts to which the offer of evidence would normally be directed. . . . The true concept of what is judicially known [therefore] is that it is something which is already in the court's possession or, at any rate, is so accessible that it is unnecessary and therefore time wasting to require evidence of it. . . . Thus, judicial notice properly may be taken of [a court's findings in another case] only if those findings reasonably can be said to be not in dispute." (Citations omitted; internal quotation marks omitted.) *State* v. *Griffin*, 251 Conn. 671, 702–703, 741 A.2d 913 (1999). A review of Judge Bhatt's June 6, 2023 memorandum of decision in the defendant's habeas case reveals that the defendant testified in the habeas trial that, after the first day of evidence in his criminal trial, he had conversations with Fazzone that left him with the impression that he should flee the jurisdiction, purchase a burner phone, and change his hair and that, if he fled, the trial would stop and he would be able to hire alternative counsel. According to the memorandum of decision, however, Fazzone also testified in the habeas trial that he did not, in any way, advise the defendant to flee, and in fact advised him against it. Therefore, the allegedly "undisputed" fact that Fazzone gave the defendant the impression that his trial would stop if he fled, can, to the contrary, reasonably be said to be in dispute, rendering it an improper subject of judicial notice.

In support of this claim, the defendant argues that, as of the November 6 hearing, "[t]he court was on notice . . . of the desperate circumstances in which the defendant found himself" due to "the incompetence of [Fazzone] and the breakdown in the attorney/client relationship," and should have inferred on that basis that the defendant posed a flight risk and advised him of what the consequences would be if he failed to appear for the remainder of his trial. The defendant further argues that, in the absence of any such advisement, "it cannot be said that [he] waived his right to be present at his own trial" because he was not "relinquishing a known right." (Internal quotation marks omitted.) He concedes that "Connecticut's court rules do not currently expressly require this advisement" but, nonetheless, argues that this court "should adopt such a rule as an exercise of its supervisory authority," or that, "[a]t the very least, the absence of such an advisement under the circumstances of this case was plain error." He further contends that, by trying and sentencing him in absentia without having delivered such an advisement, the court violated his constitutional right to be present at his trial. In response, the state argues that the defendant's claim is largely foreclosed by this court's decision in *State* v. *Hernandez*, supra, 197 Conn. App. 257, and that he is not otherwise entitled to relief on this claim. We agree with the state.

In *Hernandez*, the defendant, who had been convicted of assault in the first degree, failed to appear for his sentencing. Id., 259. At the time, the defendant was at liberty on bail, and the court previously had granted the defendant's request to delay sentencing by approximately one month so that he could "get his affairs in order." (Internal quotation marks omitted.) Id., 259–60. When the defendant failed to appear, the court called the bond, ordered the defendant's rearrest, and then proceeded to sentence the defendant in absentia to a

term of twenty years of incarceration. Id., 261. On appeal, the defendant claimed that the trial court had violated his constitutional right to be present at all critical stages of the trial when it had sentenced him in absentia, because, inter alia, it had failed to notify him that sentencing would proceed in his absence if he did not appear. Id. Because this constitutional claim was unpreserved, the defendant sought review under *Golding*. Id.

This court rejected the defendant's claim. It concluded that the defendant had waived his constitutional right to be present at sentencing and that his claim thus failed under *Golding*'s third prong. Id., 264–65. It explained that, "[w]hile the defendant's failure to appear for sentencing alone satisfies waiver in this case," there was additional evidence in the record that the defendant knew that he was required to be present at sentencing and had knowingly and voluntarily relinquished that right. Id., 265. In particular, the court observed that, in light of the fact that the defendant was at liberty on bail, "it would be disingenuous to suggest that [he] . . . did not know that he had a duty to appear at sentencing or that he did not know of the possibility that the sentencing would continue in his absence." Id. The court also noted that the record was clear that the defendant was aware that sentencing was scheduled for the date on which he failed to appear, yet he elected not to attend. Id.

The court further disagreed that the trial court was required to advise the defendant, prior to imposing sentence, that sentencing would proceed in his absence. The court explained that, of the cases cited by the defendant to support his proposition that such an advisement was constitutionally required, all were factually distinguishable because they involved defendants who had been removed from the courtroom due to disruptive behavior or at their own request, and who

were either in police custody or had elected to leave trial in the middle of proceedings. Id., 267–68. The court concluded that "[t]he trial court is not required to pre-emptively notify a defendant that his case will proceed in his absence without any indication that he would be absent at some later time." Id., 268. It reasoned that to impose such a requirement on the trial court "would give the defendant the power to control the court by unilaterally prevent[ing] his case from going forward, allowing him to defy the law with impunity, and in the process, to paralyze the [criminal] proceedings." (Internal quotation marks omitted.) Id.

In the present case, the record reflects that at the time the defendant absented himself from trial, he was—like the defendant in *Hernandez*—at liberty on bond. The record further reflects that, as in *Hernandez*, the defendant was aware of the date on which proceedings would resume, because during the November 6 hearing, the court clearly and repeatedly informed the defendant that proceedings would resume on the morning of November 10, and that the defendant indicated his understanding of this fact.[20] Furthermore, although there is no indication that the defendant was aware of the date set for sentencing, the court found, and the defendant does not contest, that he made no effort to learn that information and that there was no impediment to his attending his sentencing. The record does

___

[20] For example, at one point the court stated: "On Monday morning, I need to conduct a canvass with you as to your ability to represent yourself if that's your final decision. If I find that you are not able to represent yourself . . . then Mr. Fazzone is going to remain your attorney." The defendant replied: "Yes, Your Honor." At another point, the court stated: "So, I guess the defendant's motion for dismissal and/or removal of counsel, the court will make a final decision on that Monday morning. It will be the first order of business. I think in light of that, we should start with that piece of it at 9:30 on . . . Monday morning." The defendant again stated: "Yes, Your Honor." At another point, the court stated that the defense "needs to be prepared to present . . . all of its witnesses Monday morning," to which the defendant again responded, "Yes, Your Honor."

not reflect, nor does the defendant argue, that the state was in any way at fault for the defendant's failure to appear on November 10, or for his sentencing. We therefore agree with the trial court that the defendant's conduct constituted a waiver of his right to be present at both his trial and sentencing. As such, the defendant cannot show that the court violated his constitutional right to be present or otherwise erred—let alone committed plain error—in trying and sentencing him in absentia.

We are likewise unconvinced that the trial court plainly erred or violated the defendant's constitutional rights when it failed to inform him of the consequences of his failure to appear. The defendant's concession that such an advisement is not currently required in Connecticut courts is fatal to his claim of plain error in this regard, as "[i]t is axiomatic that the trial court's proper application of the law existing at the time of trial cannot constitute reversible error under the plain error doctrine." *State* v. *Diaz*, 302 Conn. 93, 104 n.8, 25 A.3d 594 (2011). As for the defendant's unpreserved claim of constitutional error, this court in *Hernandez* rejected the argument that an advisement of the sort the defendant seeks is constitutionally required when the defendant gives no indication that he will be absent at a later date. And, despite his assertions to the contrary, the defendant gave no indication of his desire to flee during the November 6 hearing. To the contrary, as we previously have discussed, after his requests for a thirty and fifteen day continuance were denied, the defendant requested, and the court granted, a "couple days" to "pull it together," implying that, the denial of his requests for more time notwithstanding, the defendant intended to continue with the trial—whether counseled or in a self-represented capacity—on the following Monday. Moreover, the record reflects that, during the November 6 hearing, the defendant repeatedly

assented whenever the court discussed its plans to resume proceedings on November 10. See footnote 20 of this opinion. Although the defendant argues that the court should have inferred that he was likely to flee because Fazzone was allegedly incompetent, and it was clear that there had been a breakdown in their relationship, he cites no authority for the proposition that a defendant's dissatisfaction with his counsel's performance, standing alone, is a sufficient basis from which to conclude that the defendant is a flight risk, especially when the defendant gives contrary indicia of his intent to appear for future proceedings.

We further reject the defendant's argument that we should, through the exercise of our supervisory authority, impose a rule requiring that trial judges inform criminal defendants of the consequences of a failure to appear whenever they reasonably conclude that the defendant poses a risk of flight. The defendant has not demonstrated that the failure to give such advisements presents a "pervasive and significant problem" sufficient to justify the promulgation of a new rule pursuant to our supervisory authority. *State* v. *Hill*, 307 Conn. 689, 706, 59 A.3d 196 (2013). Moreover, as we have already determined, the defendant's responses to the court during the November 6 hearing indicated not that he had any intention of fleeing but that he would appear the following Monday; accordingly, we have no occasion, under the circumstances of this case, to establish the rule that the defendant seeks. See, e.g., *State* v. *Weatherspoon*, 332 Conn. 531, 553, 212 A.3d 208 (2019) (declining defendant's invitation to exercise supervisory authority to promulgate rule prohibiting generic tailoring arguments, where record showed that prosecution made specific rather than generic tailoring argument, and "we do not disapprove of specific tailoring arguments when they are warranted by the evidentiary

record"). As such, the defendant has not made a show-
ing that this case presents circumstances "extraordi-
nary" enough to merit the exercise of our supervisory
authority. The defendant's claim therefore fails.

IV

The defendant next claims that the trial court improp-
erly denied Fazzone's motion for a mistrial when the
defendant failed to appear on November 10, 2014. We
disagree.

"[Although] the remedy of a mistrial is permitted
under the rules of practice, it is not favored. . . . If
curative action can obviate the prejudice, the drastic
remedy of a mistrial should be avoided. . . . The trial
court enjoys wide discretion in deciding whether a mis-
trial is warranted . . . and its evaluation as to events
occurring before the jury is to be accorded the highest
deference. . . . Every reasonable presumption will be
given in favor of the trial court's ruling . . . ." (Internal
quotation marks omitted.) *State* v. *Tarver*, 166 Conn.
App. 304, 326, 141 A.3d 940, cert. denied, 323 Conn. 908,
150 A.3d 683 (2016). "On appeal, we hesitate to disturb
a decision not to declare a mistrial. The trial judge is
the arbiter of the many circumstances which may arise
during the trial in which [her] function is to assure a
fair and just outcome. . . . The trial court is better
positioned than we are to evaluate in the first instance
whether a certain occurrence is prejudicial to the defen-
dant and, if so, what remedy is necessary to cure that
prejudice." (Internal quotation marks omitted.) *State* v.
*Walker*, 80 Conn. App. 542, 553, 835 A.2d 1058 (2003),
cert. denied, 268 Conn. 902, 845 A.2d 406 (2004).

We discern no abuse of discretion in the trial court's
denial of Fazzone's motion for a mistrial. As we pre-
viously have explained, the trial court properly con-
cluded that the defendant had waived his right to be
present when, while at liberty on bond, he failed to

appear at his trial through no fault of the state, despite having been clearly informed that trial would resume on November 10. See, e.g., *State* v. *Parham*, 174 Conn. 500, 506, 391 A.2d 148 (1978) (where court could reasonably conclude that defendant waived right to be present by voluntarily absenting himself from trial after two days of evidence, and defendant made no showing that he was unable to appear through no fault of his own, denial of defense motion for mistrial on basis of defendant's absence was not erroneous). The court was not obliged to "[permit] [the] defendant unilaterally to prevent his case from going forward" by granting him the benefit of a mistrial when he failed to appear. *State* v. *Drakeford*, supra, 202 Conn. 81. Moreover, the court provided a curative instruction to the jury, directing it not to draw any inferences adverse to the defendant as a result of his absence or otherwise speculate as to why he was not present in court, and "in the absence of a showing that the jury failed or declined to follow the court's instructions, we presume that the jury followed them." (Internal quotation marks omitted.) *Lafferty* v. *Jones*, 229 Conn. App. 487, 535 n.40, 327 A.3d 941 (2024), cert. denied, 351 Conn. 923, 333 A.3d 105 (2025), and cert. denied, 351 Conn. 923, 333 A.3d 106 (2025). The court acted well within its discretion in determining that such an instruction could obviate any prejudice that the defendant had brought upon himself by voluntarily absenting himself from the proceedings.

Although Fazzone did not articulate his request for a mistrial in constitutional terms, the defendant nonetheless claims on appeal that the court's denial of Fazzone's motion for a mistrial "raises a deprivation of the defendant's due process rights under [the] federal [constitution]," and the defendant seeks *Golding* review of this unpreserved constitutional claim. He further argues that the court was obligated, in light of Fazzone's allegedly poor performance, to grant the motion for a

mistrial in order to protect the defendant's right to competent counsel—an argument that Fazzone never presented to the trial court. Although his principal appellate brief is somewhat unclear on this point, we understand the defendant's unpreserved claim of constitutional error to be that his right to counsel, as guaranteed by the sixth and fourteenth amendments to the federal constitution, imposed a duty on the trial court to grant a mistrial in light of Fazzone's claimed deficiencies. However, "[s]ince this argument is, in essence, a disguised allegation of ineffective assistance of counsel, it is governed by our decisions requiring such claims to be pursued on a petition for a new trial or on a petition for a writ of habeas corpus, rather than on direct appeal, so that a complete factual record can be developed." *State* v. *Gonzalez*, supra, 205 Conn. 684; see also footnote 14 of this opinion. Accordingly, because the record is inadequate for review of this claim, it fails under the first prong of *Golding*.

V

The defendant next claims that the court should have sua sponte discharged Fazzone as his counsel and declared a mistrial because, "[b]y the end of the second day of evidence, Fazzone had demonstrated to the court that he did not have the minimum level of competence to continue as defense counsel, and was ill-equipped to provide even minimally effective assistance of counsel to the defendant." The defendant claims that, by failing to do so, the court committed plain error. We decline to review this claim.

The defendant's claim is substantially identical to the unpreserved constitutional claim that we discuss in part IV of this opinion. We have already determined that the record is inadequate for our review of that claim under *Golding,* and where "the record is inadequate for review under *Golding* it is also inadequate for consideration

under the plain error doctrine." *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 69 n.3, 967 A.2d 41 (2009). We therefore conclude that the record is inadequate for our review of this claim and decline to review it.

## VI

Finally, the defendant claims that the trial court improperly relied on the rape shield statute to prevent him from cross-examining the victim about a false allegation of sexual misconduct that she allegedly had made against T.[21] In response, the state argues that the defendant "myopically" overlooks the fact that the trial court also precluded him from asking about the victim's alleged allegation on the ground that there was no good faith basis for such a line of questioning. The defendant does not address the state's argument in his reply brief. We conclude that this claim is nonjusticiable because the defendant has failed to challenge all of the bases for the trial court's adverse ruling, and, accordingly, we dismiss the appeal as to this claim as moot.[22]

[21] At certain points in his principal appellate brief, the defendant also appears to contend that the trial court improperly barred him from asking the victim about an allegation of sexual misconduct she allegedly had made against her friend's brother. See part II of this opinion. Our review of the transcript of November 5, 2014, however, reveals that, although Fazzone did state that he intended to inquire both as to this claimed allegation and as to the claimed allegation that the victim had made against T, when pressed by the trial court as to the relevance of the former line of inquiry, Fazzone backed down, stating that he did not "want to rock the boat" and that he "stood by his contentions" only with respect to his question about the victim's allegation against T. The court then proceeded to rule that the defendant lacked a good faith basis for asking about the alleged allegation against T. The court did not, however—and was not asked to—rule on the permissibility of any questions the defendant may have had about a past allegation of sexual misconduct against the brother of the victim's friend. To the extent that the defendant challenges any such ruling, he challenges a ruling that the trial court never made, and we cannot pass on the correctness of such a ruling. See, e.g., *State* v. *McLaughlin*, 135 Conn. App. 193, 202, 41 A.3d 694, cert. denied, 307 Conn. 904, 53 A.3d 219 (2012).

[22] Although the state does not couch its argument in jurisdictional terms, its contention that the defendant failed to challenge an independent basis

"Mootness is a question of justiciability that must be addressed as a threshold matter because it implicates this court's subject matter jurisdiction . . . . [I]t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way. . . . Where an appellant fails to challenge all bases for a trial court's adverse ruling on his claim, even if this court were to agree with the appellant on the issues that he does raise, we still would not be able to provide [him] any relief in light of the binding adverse finding[s] [not raised] with respect to those claims. . . . Therefore, when an appellant challenges a trial court's adverse ruling, but does not challenge all independent bases for that ruling, the appeal is moot." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Lester*, 324 Conn. 519, 526–27, 153 A.3d 647 (2017).

We previously have set forth the procedural history relevant to this claim in part II B of this opinion. In support of his claim, the defendant argues that the trial court erroneously concluded that the rape shield statute barred him from asking about the victim's alleged allegation against T. He contends that the rape shield statute "prohibits questions into the complainant's own

for the court's adverse ruling implicates our subject matter jurisdiction, which we are required to address once raised. See, e.g., *Housatonic Railroad Co.* v. *Commissioner of Revenue Services*, 301 Conn. 268, 275 n.4, 21 A.3d 759 (2011). The defendant had the opportunity to respond to the state's argument in his reply brief but elected not to do so. See, e.g., *Fischer* v. *M&T Bank, N. A.*, 233 Conn. App. 147, 152–53, 338 A.3d 1222 (2025) (dismissing appeal for lack of appellate standing where issue of standing was raised by defendants in appellate brief and plaintiff did not address issue in reply brief or when asked during oral argument). Accordingly, we conclude that the defendant has been afforded an adequate opportunity to address whether the appeal should be dismissed as moot with respect to this claim.

prior sexual history, *not* into evidence of the complainant's lack of veracity." (Emphasis in original.) As the state correctly points out, however, the defendant ignores the fact that the trial court precluded him from asking about the victim's alleged allegation against T primarily on the separate ground that Fazzone lacked a good faith basis for asking that question. See, e.g., *State* v. *Henry*, 72 Conn. App. 640, 666, 805 A.2d 823 ("[a] good faith basis on the part of examining counsel as to the truth of the matter contained in questions propounded to a witness on cross-examination is required" (internal quotation marks omitted)), cert. denied, 262 Conn. 917, 811 A.2d 1293 (2002). The defendant not only fails to challenge this separate basis for the trial court's decision; at one point, he appears expressly to concede the correctness of the court's ruling, stating: "It is true that . . . Fazzone failed to provide any sort of cogent explanation of why this line of questioning was proper and permitted under the [Connecticut] Code [of Evidence]." Therefore, even if we were to agree with the defendant that the trial court's interpretation of the rape shield statute was erroneous, we would not be able to provide him any practical relief on his claim. See, e.g., *State* v. *Lester*, supra, 324 Conn. 528. We therefore conclude that this claim is moot and, accordingly, that we lack subject matter jurisdiction to review it.[23]

---

[23] In the section of his principal appellate brief discussing the reviewability of this claim, the defendant contends that Fazzone preserved his objection to the trial court's ruling but, in the alternative, "submits that the claim is also reviewable [under *Golding*] as it involves a violation of [the defendant's] constitutional right to confront witnesses and to cross-examination . . . as required under the sixth amendment." We agree that the defendant properly preserved his claim, and thus we need not analyze the *Golding* prongs. To the extent, however, that the defendant seeks now to raise a separate unpreserved constitutional claim that his right to confrontation afforded him a right to unfettered cross-examination of the victim, regardless of whether his questions had a good faith basis, we disagree. The defendant cites no authority for and provides no substantive analysis for any such claim, rendering it inadequately briefed. Moreover, such a claim is contrary to well established law. The confrontation clause "guarantees only an oppor-

The appeal is dismissed as to the defendant's claim that the trial court improperly precluded him from asking the victim about a prior accusation of sexual misconduct that she allegedly had made; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

tunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish . . . . Thus, [t]he confrontation clause does not . . . suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination . . . ." (Internal quotation marks omitted.) *State* v. *Halili*, 175 Conn. App. 838, 850, 168 A.3d 565, cert. denied, 327 Conn. 961, 172 A.3d 1261 (2017). "[T]rial judges retain wide latitude insofar as the [c]onfrontation [c]lause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant . . . . [W]e have upheld restrictions on the scope of cross-examination where the defendant's allegations of witness bias lack any apparent factual foundation and thus appear to be mere fishing expeditions." (Internal quotation marks omitted.) Id., 853.